Claus **JORDAN–MAIER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–88–00362–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 1990.

Discretionary Review Refused Oct. 3, 1990.

Robert Wicoff, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Lester Blizzard, David Singer, Asst. Dist. Attys., for appellee.

Before SAM BASS, HUGHES and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This case involves the aggravated sexual assault of a child. The State charged Claus Jordan–Maier, appellant, with intentionally and knowingly causing penetration of complainant's sexual organ "by placing his sexual organ in [hers]." TEX. PENAL CODE ANN. § 22.021(a)(B)(i) (Vernon 1989). A jury found appellant guilty and assessed punishment of 25 years confinement. We affirm.

At trial, the witnesses testified as follows:

*Jane:* She is appellant's daughter.[1] She was 11 years old when they moved from Germany to Washington state. In Washington, appellant showed her "how to massage his private part." A few months later, appellant again told Jane to massage his penis with cream. She complied. This continued for approximately a year and one-half, until Jane told her mother. Jane testified that she did not tell her mother earlier because she was afraid of her father. Her father had beat her mother. About five months later, appellant took Jane off the school bus and, upon arriving home, told her to pack some clothes. Jane tried to lock herself in the bathroom, but appellant unscrewed the lock. Appellant took Jane to Los Angeles. While at a hotel in Los Angeles, Jane testified that appellant:

[C]ame and picked me up and put a pillow under me, on my bottom and then he pretended that he wanted to make love with me.

\* \* \* \* \* \*

Well, he lay me down and there was a pillow on—there was a pillow under me. And then he started putting his thing into mine and once he really hurt me real bad because he tried to put it in mine.

\* \* \* \* \* \*

[A]nd then he came on and started going up and down like that. (indicating)

Counsel: Were your legs together like that?

Jane: Yes ... Once he tried to open my legs real wide.

Later, appellant brought Jane to Houston. Appellant and Jane lived in an apartment, and he continued to force her to massage his penis and shower with him. Jane testified appellant would put his "thing" against her "thing," that her father often took her into his bedroom and did "the same thing" he did in California.

Counsel: Why don't you show us again when you were in Houston?

Jane: Well, he put a pillow under me like that, and then he started going back and forth like that. (indicating)

Counsel: [W]hen he used to do that was his thing touching your thing ... And was it pushing up against you?

Jane: Yes.

Jane said it hurt, and once, when she went to the bathroom to clean herself, she noticed "some blood—a drop of blood go down." She confirmed that appellant "put his thing in [her] thing many times."

*Ms. Jordan:* She is appellant's wife. She first learned that her husband was sexually abusing Jane when Jane told her. When she confronted appellant with the charges that he sexually abused Jane, appellant admitted it. She tried to get her husband to move out, but he had no place to go. She made him stay away from the children.

*Father Cannole:* When appellant and his family moved to Washington, they were destitute. He helped appellant find jobs and a place to live. The first time he knew about appellant's sexual abuse of Jane was after appellant disappeared with Jane. Jane's mother was distraught. Appellant called him from Houston and asked him not to testify. He confronted appellant with the charges that he sexually abused Jane, and appellant did not deny them. Appellant threatened to testify that Father Cannole was having an affair with his wife.

1. We refer to complainant as Jane, which is not her real name.

*Dr. Carter:* She saw Jane after Children's Protective Services notified her of possible sexual abuse. She did not find any vaginal tears or redness, but stated that tears heal within two or three days. She examined Jane four days after the last incident of abuse. She also testified that Jane did not have a normal hymen, but she could not say that this resulted from sexual abuse. Dr. Carter said her findings were consistent with a slight penetration in the vaginal opening, but not a complete penetration.

*Appellant:* Appellant is a citizen of the Federal Republic of Germany. After living in Germany, Guatemala, and Honduras, appellant moved his family to the state of Washington. He left with Jane to save his marriage. He saw his wife holding hands with a man and thought she was having an affair with him. Appellant said that Jane, his wife, and Father Cannole all made untrue statements about him when they testified. He did not sexually abuse his daughter.

## I. Sufficiency of the evidence

■ In his first point of error, appellant asserts that the evidence is insufficient to support the conviction, because the State did not show that he penetrated Jane's sexual organ with his penis. In reviewing the sufficiency of the evidence, we view it in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984); *Spearman v. State,* 694 S.W.2d 216, 218 (Tex.App.—Houston [1st Dist.] 1985, no pet.). We must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Anderson v. State,* 701 S.W.2d 868, 872 (Tex.Crim.App. 1985); *Barron v. State,* 773 S.W.2d 44, 46 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

On appeal, appellant contends the evidence shows he touched and "pushed up against" Jane's sexual organ, but it does not show that he put his penis "inside" her sexual organ. Appellant cites specific testimony in the record, but fails to cite the portion of Jane's testimony in which she answered that he did "put his thing *in* [her] thing." The testimony of a sexual assault victim alone is sufficient evidence of penetration, even if the victim is a child using unsophisticated language to describe the act. *Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App.1978); *Villanueva v. State,* 703 S.W.2d 244, 245 (Tex.App.—Corpus Christi 1985, no pet.).

Appellant also points to statements made by Dr. Jennifer Carter, the doctor who examined Jane. Dr. Carter's testimony, that she did not find evidence of a complete penetration, does not help appellant. Proof of the slightest penetration of the female sex organ is sufficient. *Garcia,* 563 S.W.2d at 928; *Villalon v. State,* 739 S.W.2d 450, 452 (Tex.App.—Corpus Christi 1987, no pet.).

The evidence is sufficient to support appellant's conviction. We overrule appellant's first point of error.

## II. Authentication of documents

In his second point of error, appellant argues that the trial court erred in admitting State's exhibit 2 because the documents were not properly authenticated. The documents were from Germany and purported to show that appellant had been convicted of a felony grade offense. The State introduced the documents to impeach appellant after he denied having a criminal record. The State asserts that extrinsic evidence of authenticity is not required for the authentication of foreign documents.

### A. Standard of review

The determination of admissibility of evidence is within the sound discretion of the trial court, and we will not reverse it on appeal unless appellant shows a clear abuse of discretion. *Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Crim.App.1985); *Nubine v. State,* 721 S.W.2d 430, 432 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

The State offered exhibit 2 to impeach appellant. Rule 609(a), TEX.R.CRIM.EVID., permits a party to attack the credibility of a witness by offering evidence that the witness was convicted of a felony or a crime involving moral turpitude. The evi-

dence that a witness was convicted of a crime may be elicited from the witness or established by public record. Before admitting the evidence, the court must determine that the probative value of the evidence outweighs its prejudicial effect. *Werner v. State*, 711 S.W.2d 639, 643 (Tex. Crim.App.1986).

### B. The foreign documents

During cross-examination, the State repeatedly asked appellant if he had been convicted in Germany in 1978 of abusing a minor child, fraud, and failure to pay support. Appellant insisted he had not. Appellant said that he had been extradited from Guatemala to Germany, and charged with sexual abuse and fraud, but claimed he was not convicted.

The State offered into evidence as its exhibit 2, documents that purported to list four convictions against appellant. Appellant objected that the documents were not authenticated as required under rule 902(3), TEX.R.CRIM.EVID.

### 1. Authentication under rule 902(3)

■ Rule 902 permits a party to introduce a public document into evidence without extrinsic evidence of authenticity, if the document is accompanied by a certificate that complies with paragraphs (1), (2), or (3) of rule 902, or with any statute or court rule. *Sanders v. State*, 787 S.W.2d 435 (Tex.App.—Houston [1st Dist.] 1990, n.p. h.); *see Martinez v. State*, 754 S.W.2d 831, 833 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

Rule 902(3) governs the authentication of foreign documents. It provides that a party offering a foreign document does not need extrinsic evidence of authenticity of the document if:

1. the document was executed or attested by an official of the foreign country, who is authorized by that country to make the attestation, and who does so in his official capacity; and
2. the document is accompanied by a final certification, that:
   a. is made by a diplomatic or consular official; and
   b. verifies the signature and official position of the person who executed or attested the document; *OR*
3. the document is not accompanied by final certification, but
   (1) upon a showing of good cause, and
   (2) proof that all parties were given the opportunity to investigate the authenticity and accuracy of the document, and
   (3) the trial court rules:
      (a) the document is to be treated as authentic; or
      (b) the document may be proved by an attested summary even without final certification.

*See* TEX.R.CRIM.EVID. 902(3).

We must review the testimony regarding the State's exhibit 2 to determine if the trial court abused its discretion in admitting it into evidence.

First, was the State's foreign document executed or attested by an official of the foreign country, who had the authority to execute the document, and did so in his official capacity? The State presented a witness, who speaks and reads German, to interpret the State's exhibit 2. The witness testified about each page. He identified the official seal accompanying the signature on the first page of the document as that of Bundeskriminalamt, which he said:

I guess, the roughest comparison I can make, it's sort of like a seal of, say, the Justice Department of the United States.

The State's witness identified the seal accompanying the signature on the second page as the seal of the Bundeszentralregister office, which he said was a national record office of Germany.

On the third page of the document, the State's witness said he could not read the signature, but described it as the signature of the person who entered documents into the central penal record.

Dietmar Wenger, a West German vice-consul, appeared as a defense witness. Wenger testified that he is in the legal department of the consulate. His duties include preparing official documents from Germany. On cross-examination, when the

State asked Wenger to testify about its exhibit 2, Wenger refused. Wenger said he did not have written permission from his government to testify about it. When asked if he had any doubts about the authenticity of exhibit 2, Wenger replied: it was not an original and was not certified. He was then asked if it was a fraud, and he responded, "Certainly not." We hold the document was some proof that signatures on the document were authentic.

Next, was the State's foreign document accompanied by a final certification, or was there good cause to admit the document without the certificate? The State's document was not accompanied by a final certification. The issue is whether there was: (1) a showing of good cause; (2) proof that all parties were given the opportunity to investigate the authenticity and accuracy of the document; and (3) a ruling by the trial court that the document was to be treated as authentic.

█ Good cause. The third page of the exhibit is a letter from the central register, stating that their entry shows the person was convicted of sexual abuse of children and fraud. The sixth page states that the person convicted, Klaus Dieter Jordan, is married to a woman named Carmen Hernandez and resides in Guatemala City. The information on the documents is consistent with the evidence. For example, appellant stated on the record that his name is Claus Jordan–Maier, and his wife's name is Carmen. She also testified at trial. They lived in Guatemala for 9–10 years. The State also produced an identification expert who compared appellant's fingerprints with those in the German records, and said that they were the same. We hold that the State established good cause.

█ Opportunity to investigate authenticity. The record showed that appellant knew about the State's document before it was offered. The trial lasted approximately five days. When the State attempted to offer the exhibit the first time, the trial court adjourned for the day so that the State could produce a witness to verify its authenticity. The next day, appellant had Dietmar Wenger ready to testify. He had

written permission to testify to defendant's exhibits; but, he said that he did not have permission to testify to the State's exhibits.

Wenger examined the State's exhibit 2 before trial, however. He admitted that he discussed the exhibit with the prosecutor before trial, and interpreted it for him. Just before the document was admitted, the trial court asked: "I believe opposing counsel has reviewed the document? Is there any objection?" Appellant responded that it was urging the same objections. We hold that the record shows appellant had sufficient opportunity to investigate the authenticity of the document.

Trial court ruling. The trial court ruled that the exhibit was to be admitted.

### 2. Authentication under rule 901

█ Even if the exhibit was not admissible under 902(3), the State argues it was admissible under rule 901, TEX.R.CRIM.EVID. If a document is not self-authenticated, before it is admitted as evidence, the party offering it must introduce extrinsic evidence of its authenticity. TEX.R.CRIM.EVID. 901(a) & (b), 902; *See Sanders v. State*, 787 S.W.2d 435 (Tex.App.—Houston [1st Dist.] 1990, n.p.h.).

Under rule 901, the requirement of authentication may be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.CRIM.EVID. 901. This kind of authenticating evidence may come from a witness who has the knowledge to testify that a matter is what it is claimed to be, or from a comparison by an expert witness. TEX.R.CRIM.EVID. 901(b)(1) and (3). Here, when the State asked Wenger whether exhibit 2 was a fraud, he exclaimed, "Certainly not." We hold that Wenger's response to that question alone, considering all the other circumstances, was enough to support the admission of the exhibit.

We hold the trial court did not abuse its discretion when it admitted the State's exhibit 2, and overrule appellant's second point of error.