IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-314-CR





PHILLIP WORRELL,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 92,296, HONORABLE TOM BLACKWELL, JUDGE PRESIDING



 





 This appeal is taken from a conviction for aggravated sexual assault of a child. 
Tex. Penal Code Ann. § 22.021 (West 1989). After the jury found appellant guilty, the trial court
assessed appellant's punishment at five years' imprisonment.

 Appellant advances two points of error. First, appellant challenges the legal
sufficiency of the evidence to support the conviction. Second, appellant attacks the factual
sufficiency of the evidence to sustain the jury's verdict. See Orona v. State, 836 S.W.2d 319
(Tex. App.--Austin 1992, no pet.); Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet.
ref'd untimely filed).

 The indictment in pertinent part charged that on or about March 7, 1988, appellant
"did then and there intentionally and knowingly cause the penetration of the anus of M    C   , a
child younger than 14 years of age, with the finger of the said Phillip Worrell."

 M    C   , who was six years old at the time of the trial and approximately three
years and nine months old at the time of the alleged offense, testified that appellant, his stepfather,
had touched him "in a bad way." M    C    explained that appellant had touched his "ding-ding"
(penis) and "butt" with appellant's hand, and that it did not feel good. The next morning when
he went to the bathroom he felt something bleeding. M    C    reported his injury to his mother
and told her appellant had touched his "butt" and "ding-ding." M    C    related that appellant had
caused his "butt" to bleed by pushing too hard with appellant's hand. He stated that appellant had
done this "one time," and that no one else had done anything like that to him.

 M    C   's mother, D    C   , testified that she married appellant in 1985 after the
death of his first wife, her maternal aunt. After her aunt's funeral in Vermont, D    C    left
Vermont with appellant and his teenage daughter in order to take care of them at their home in
Virginia. M    C    was about eight months old at the time. Approximately a month later, D   
C    and appellant married. Sometime later, they moved to Texas and settled in Travis County.

 About March 1 or 2, 1988, D    C    observed M    C    jump out of his bubble bath
and complain that his "butt" was sore. She saw that his anus was red. The condition was treated
with an ointment and healed. Around March 7 or 8, 1988, M    C    told his mother that "Daddy
(appellant) hurt me last night." He reported that appellant hurt his "butt" by putting "his fingers
up there." Examining the child, D    C    found M    C   's anus to be "red, swollen, bloody, and
torn." Later the same day, D    C    took her son to be examined by a physician.

 D    C    testified that when M    C    was about three years old he began stuttering,
wetting his bed, chewing his nails, and he began to have nightmares. She related that M    C   
would frequently hide from appellant when appellant came home from work. In discussing her
married life, D    C    related that appellant "sometimes preferred sex through the anus."

 Dr. Walter Kuhl, a pediatrician, testified that he had examined M    C    in March
1988. While taking information from the child and his mother, Dr. Kuhl heard M    C    tell his
mother that it was appellant's fingernails that hurt him. The doctor performed a rectal
examination. M    C    rolled over and readily lifted his buttocks so the doctor could see his rectal
area. Dr. Kuhl found M    C   's action highly unusual for a child of his age, being so receptive
for a rectal examination. The doctor found the rectal area to be red, but he did not observe any
blood, cuts or tears. Dr. Kuhl felt that the anus had been manipulated and testified that "there
wasn't a lot of question in my mind that this boy had been abused."

 Dr. Doug Andrews, a psychologist, who began treating M    C    in the spring of
1989 after M    C    and his mother returned to Vermont, testified that M    C    had a post-traumatic stress disorder common in sexual abuse victims. Over a period of time, Dr. Andrews
reported that M    C    frequently would say, without questioning, that "Phil bit my ding-ding"
and "Phil hurt my butt hole." He never heard M    C    make accusations against any other
person. Dr. Andrews reported a number of other sexual statements made by M    C   , and noted
that M    C    was very aggressive with his kindergarten classmates, grabbing at their genitals.

 Appellant testified that he retired from the United States Navy as a Chief Petty
Officer after 26 years of service with a number of awards, commendations, and medals. He had
a high security clearance. Appellant denied any sexual contact or touching of M    C   . 
Appellant related that M    C    had been in his home since he was eight months old and that he
regarded M    C    as his son.

 Appellant detailed his crumbling marriage to M    C   's mother. Shortly after his
first wife's death, he married her niece, D    C   . While appellant was in the Navy, their
relationship was good. Sometime after his retirement, they decided to move from Virginia to
Texas for financial reasons. At first, they lived with D    C   's brother. When appellant obtained
employment with Tracor, appellant purchased a mobile home in the Cherry Hollow subdivision
of Travis County. Appellant, D    C   , M    C   , and appellant's daughter, Robin, moved into
the home. They "took in" Bryan Riley, a teenager.

 Appellant related that early in 1987, D    C    began to spend time with her nephew
and other teenagers and began to smoke marihuana. Appellant admitted that he also smoked
marihuana but only on weekends. Later D    C    decided to go to Vermont to "dry out." She
left M    C    with appellant and Robin. After two months, D    C    imposed a condition for her
return to Texas--that Bryan Riley must leave the home. In June of 1987, appellant told Riley to
leave.

 After D    C   's return, the marriage was "still not right." Appellant and D    C   
saw a counselor and discussed separation. D    C    returned to Vermont taking M    C    with
her. Her condition for returning to Texas this time was that Robin leave the household. 
Appellant sent his daughter to a Baptist home for girls in Midland. The relationship did not
improve upon D    C   's return in the early part of 1988. The alleged offense occurred in March.

 Appellant testified that he never liked anal sex and when he had anal sex with D   
C    it was at her request. Appellant recalled M    C    had once said Bryan Riley had sexually
abused him.

 Appellant admitted that when he learned his first wife had cancer, he had once
caressed his daughter's breasts and felt her private parts. He acknowledged that he lied about this
to investigating authorities in Virginia, to D    C   , and to employees of the Texas Department
of Human Services after M    C   's complaint in March 1988. Appellant denied that he had ever
engaged in other sexual abuse of Robin or in any sexual conduct with M    C   .

 Reverend Jack Humbert testified that he had known appellant for two years and that
appellant had a good reputation as a truthful person. He testified that appellant had admitted to
him the molestation of Robin.

 Shirley Pierce was a neighbor in the Cherry Hollow subdivision. Her son often
played with M    C   . She considered M    C    as "strange" and not "very truthful." She related
that when D    C    and M    C    returned from Vermont the last time M    C    was constipated,
and D    C    treated the condition by inserting Ivory Soap in M    C   's rectum. Pierce heard
D    C    questioning M    C    in a leading manner about the alleged offense, and observed that
M    C    always tried to please his mother.

 Pierce related that after the alleged offense, she and her husband helped appellant
move a couch out of the mobile home. They found under the cushions Bryan Riley's billfold and
a packet of suppositories with one missing.

 Robin Worrell testified for the defense. She was in Midland when the offense
allegedly occurred. She recounted her difficulties while living with appellant and D    C   , who
was her cousin and stepmother. Robin stated that she witnessed Bryan Riley paddle M    C   ,
causing blisters; that on one occasion she observed Riley committing oral sex on M    C   , and
that once Riley had forced himself on her and had sexual intercourse with her.

 Robin testified that appellant used to chase her and pull down her pants and tickle
her, but she stopped short of saying that he molested her. Apparently believing Robin's testimony
to be a blood-thicker-than-water version of what had occurred in Virginia, the State called two
witnesses and elicited time-consuming testimony in an attempt to impeach Robin's credibility. 
This occurred despite appellant's earlier confession of the sexual molestation of his daughter.

 The jury, as the trier of fact, is the judge of the credibility of the witnesses and the
weight to be given to their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The
jury is entitled to accept or reject all or any part of the testimony by the witnesses for the State
or for the accused. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1983); Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488 U.S. 872 (1988). 
Reconciliation of evidentiary conflicts is solely a function of the trier of fact. Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Miranda v. State, 813 S.W.2d 724, 733-34 (Tex.
App.--San Antonio 1991, pet. ref'd). The fact-finder may draw reasonable inferences and
reasonable deductions from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.--Corpus Christi 1988, pet. ref'd).

 In determining whether the evidence is legally sufficient to support the conviction,
we will consider the evidence in the light most favorable to the jury's verdict and, after so viewing
the evidence, we will determine whether any rational trier of fact could have found beyond a
reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307,
319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied,
495 U.S. 963 (1990); Bonham v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), cert.
denied, 474 U.S. 865 (1985); Knabe v. State, 836 S.W.2d 837, 838 (Tex. App.--Fort Worth 1992,
pet. ref'd). This standard of review is applicable in both direct and circumstantial evidence cases. 
Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990); Christian v. State, 686 S.W.2d
930, 934 (Tex. Crim. App. 1985).

 A conviction for aggravated sexual assault may be warranted on a child's testimony
alone, even if the child uses unsophisticated language to describe the act. Lopez v. State, 815
S.W.2d 846, 848 (Tex. App.--Corpus Christi 1991, no pet.); Jordan-Maier v. State, 792 S.W.2d
188, 190 (Tex. App.--Houston [1st Dist.] 1990, pet ref'd). Moreover, the testimony of an outcry
witness--that the child/victim told the witness that the defendant committed the offense--must be
considered as having probative value in determining the sufficiency of the evidence, and such an
outcry statement is, by itself, sufficient to support a jury's verdict. Rodriguez v. State, 819
S.W.2d 871, 873 (Tex. Crim. App. 1991); Knabe v. State, 836 S.W.2d at 839. Outcry testimony
admitted in compliance with article 38.072 of the Texas Code of Criminal Procedure (1) is admitted
as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for
the truth of the matter asserted in the testimony. Rodriguez, 819 S.W.2d at 873.

 In the instant case, there was the direct evidence of the child/victim that appellant
committed the act charged. In addition, there was the immediate outcry statement to the child's
mother the next morning accusing appellant. The examining physician was of the opinion that the
child had been sexually abused. The psychologist's testimony added gloss to the other evidence
offered by the prosecution. Appellant denied the offense and offered evidence suggesting other
possibilities. Nevertheless, from the evidence viewed in the light most favorable to the jury's
verdict, we conclude that the evidence was legally sufficient for a rational trier of fact to have
found beyond a reasonable doubt all the essential elements of the offense charged. Our
responsibility does not include substituting our view of the evidence for that of the trier of fact. 
Blankenship v. State, 780 S.W.2d 198, 207 (Tex. Crim. App. 1989); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). The first point of error is overruled.

 Next, we shall consider the factual sufficiency of the evidence question. When a
court of appeals conducts a factual-sufficiency review, the court views all evidence equally,
including testimony of defense witnesses and the existence of alternative hypotheses. The court
does not view the evidence in the light most favorable to the prosecution as it does in a legal-sufficiency review. The court should set aside the verdict only if the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Orona, 836 S.W.2d at
321; Stone, 823 S.W.2d at 381.

 Applying this standard of review, and without reiterating the facts, we conclude
that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. We reject the claim that the evidence was factually insufficient to
support the conviction. The second point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Affirmed

Filed: April 27, 1994

Do Not Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 1994).