Opinion issued March 31, 2005








     






In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00160-CR
          01-04-00161-CR




ROBERT DELGADO PEREZ, Appellant

V.

STATE OF TEXAS, Appellee




On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause Nos. 880971 & 880972




MEMORANDUM OPINION
          A jury found appellant, Robert Delgado Perez, guilty of two felony offenses
of aggravated sexual assault of a child under fourteen years of age, as alleged in the
indictments.


 The trial court assessed punishment at seventeen years’ confinement
and a $10,000 fine, for each offense, with the sentences to run concurrently. In this
appeal, Perez contends that (1) the trial court erred in allowing certain medical expert
testimony; (2) the evidence is legally and factually insufficient to support his
convictions for aggravated sexual assault; and (3) the evidence is legally and factually
insufficient to support his conviction for cause number 880972 because the State
failed to prove that he contacted the complainant’s sexual organ with his mouth. We
affirm.
Background
          Perez and Trudy Perez married in September 1991 and had their first child,
R.P., in April 1992. The couple divorced in 1992, reconciled in 1998, and had their
second child in August 1999. In the spring of 2001, Trudy learned she was pregnant
with their third child. 
          On June 11, 2001, Trudy went to bed in the bedroom she shared with Perez,
and he stayed up to watch television in the living room. R.P., the complainant, went
to sleep in her own bedroom. R.P. testified that during the night, Perez entered her
bedroom, lay down next to her in her bed, and started squeezing her bottom. She
further testified that Perez touched her vagina underneath her underwear with his
hands and put his fingers inside her vagina. After a few minutes, Perez returned to
his bedroom. Trudy testified that her husband awakened her when he got into their
bed at 4:30 a.m. 
          When Trudy woke R.P. in the morning, she noticed that R.P. appeared angry
and she even swung at Trudy. Trudy asked R.P. why she was upset, and R.P. replied
that “Dad comes into bed with me . . . he comes in and tickles my middle.” Trudy
asked R.P. if she was referring to her stomach or back, and R.P. responded, “No, he
tickles–he touches my vagina.” 
          Trudy told R.P. to get into the car with her brother. She then went back into
her home and confronted Perez. Trudy asked Perez why R.P. woke up during the
night, and Perez looked shocked and answered that R.P. had bad dreams and was
moaning. 
          Trudy took R.P. to the Children’s Assessment Center (“the center”). A
physician at the center examined R.P., and a forensic therapist videotaped R.P.’s
interview. R.P. told her examining physician about the previous night’s events, and
she also told the physician about another incident that occurred one afternoon a few
weeks earlier. She stated that she was on the sofa watching television, and Perez
came up to her and told her that he wanted to try something. Perez then pulled down
R.P.’s pants and underwear, spread her legs apart, and put his tongue inside her
vagina. 
          On June 12, 2001, Deputy Daniel Telles, who was assigned to the center,
reviewed the case and videotaped his interview with Perez. In the interview, Perez
denied the allegations of sexual abuse, but admitted that, the night before, he had
entered R.P.’s bedroom and had lain down beside her. Perez told Deputy Telles that
he often tickled R.P., including between her legs, and that he pinched her bottom on
top of and underneath her underwear. He also admitted to telling R.P. that she had
a “sexy butt.” Perez said that R.P. would tell him, “Dad, you’re massaging me,” and
he would tell her, “No, it’s tickling.” 
          In the interview, Perez also discussed R.P.’s allegation that he had placed his
tongue inside her vagina. Perez admitted that a few weeks prior to the interview, he
was playing with R.P. in the living room while she was watching television. Perez
stated that he pulled off her shorts and underwear and tickled her. He further
admitted that she was moving around while he was tickling her, and that he could
have touched her vagina. Perez told Deputy Telles that he took off R.P.’s underwear,
and then blew on her belly, between her belly button and her vagina. Perez said he
supposed R.P. could have perceived that he put his tongue on her vagina. Perez
stated that he stopped this incident with R.P. because he realized that he had “gone
too far,” and he apologized to R.P. because his behavior was “wrong.” 
          Jennifer Booth, a caseworker with Children’s Protective Services, also
interviewed Perez on June 12, 2001. Booth testified at trial that Perez admitted to her
that he has tickled various areas of R.P.’s body, including her vagina. He also told
Booth that he had lain R.P. down, and opened her legs and her vagina, in order to
check if her period was coming. After he saw that it was not, he closed R.P.’s vagina
and legs, and allowed her to pull up her underwear. During his own testimony,
however, Perez denied committing the alleged offenses. 
          After R.P.’s outcry and assessment at the center, she began receiving
counseling. Her mother stated that R.P. was fragile, had many outbursts, and would
often cry. R.P. frequently stated that she wished she were dead and had never been
born. As a result of R.P.’s statements indicating a desire to commit suicide, Trudy
admitted R.P. into a psychiatric hospital. As of the date of trial, R.P. was still being
treated by medication for depression and anxiety.
          Dr. Judy Rambur, a clinical psychologist at the center, testified that her practice
focuses on child sexual abuse and she estimated that she has treated or spoken to
thousands of sexual assault victims. Dr. Rambur has undergone specialized training
that qualifies her to conduct her work with sexual assault victims. She further
testified that she has been qualified as an expert witness on numerous occasions in
Harris County, as well as other jurisdictions and internationally. 
          Although Dr. Rambur did not meet with R.P., she testified that delayed outcry
and gradual disclosure are common among sexual abuse victims. She also testified
that children who have been sexually abused are often groomed, that is, an offender
will begin with tickling or some other sort of benign conduct to test the child, and
then graduate to improper touching, groping, and further sexual abuse. Dr. Rambur
also testified that the perpetrator may not want to accept full responsibility for the
offense, but instead, may admit to portions of the offense. According to Dr. Rambur,
a perpetrator deflects portions of the responsibility to the child in order to make the
child seem more responsible for the offense. Admission of Expert Testimony
          In Perez’s first, second, and third issues, he contends that the trial court erred
in allowing Dr. Rambur’s expert medical testimony regarding (1) sexually abused
children’s delayed outcry; (2) sexual predators’ practice of testing children; and (3)
sexual predators’ practice of admitting portions, but not all, of the alleged improper
conduct. 
          We review the trial court’s admission or exclusion of evidence under an abuse
of discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000); see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Goff v.
State, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996). A trial court has wide discretion
in its decision to admit or exclude evidence. Guzman, 955 S.W.2d at 89; Theus v.
State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). A trial court’s evidentiary ruling
should not be disturbed on appeal unless it is an abuse of discretion. Powell v. State,
63 S.W.3d 435, 438 (Tex. Crim. App. 2001); see also Erdman v. State, 861 S.W.2d
890, 893 (Tex. Crim. App. 1993). If the trial court’s ruling is within the reasonable
zone of disagreement, then an appellate court should not disturb it. Powell, 63
S.W.3d at 438; see also Pierre v. State, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d) (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990)).
          Expert testimony is admissible if specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact issue. Tex. R. Evid. 702. 
“Expert testimony does not assist the jury if it constitutes a ‘direct opinion on the
truthfulness’ of a child complainant’s allegations.” Schutz v. State, 957 S.W.2d 52,
59 (Tex. Crim. App. 1997) (quoting Yount v. State, 872 S.W.2d 706, 708 (Tex. Crim.
App. 1993)). Testimony by an expert witness, however, that provides useful
background information to aid the jury in evaluating the testimony of another witness
is admissible. Id. The admissibility of such testimony is within the sound discretion
of the trial court and will not be disturbed absent a clear abuse of discretion. See
Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); see also Conner v.
State, 891 S.W.2d 668, 670 (Tex. App.—Houston [1st Dist.] 1994, no pet.). 
          Perez claims that the trial court committed reversible error in permitting Dr.
Rambur to testify, in general, regarding sexually abused children’s characteristic of 
delayed outcry of the offense, and the general characteristics of sexual perpetrators. 
Specifically, Perez contends that Dr. Rambur’s opinions are not useful to the jury in
determining the issue of his guilt or innocence, as required by the rules of evidence. 
See Tex. R. Evid. 702. 
          Expert testimony that a child exhibits behavioral characteristics that have been
empirically shown to be common among abused children is relevant and admissible
as substantive evidence under Rule 702. Perez v. State, 113 S.W.3d 819, 832 (Tex.
App.—Austin 2003, pet. ref’d); see also Hitt v. State, 53 S.W.3d 697, 707 (Tex.
App.—Austin 2001, pet. ref’d); Vasquez v. State, 975 S.W.2d 415, 417 (Tex.
App.—Austin 1998, pet. ref’d) (citing Yount v. State, 872 S.W.2d at 709). Thus, the
testimony of Dr. Rambur regarding delayed outcry was specialized knowledge that
was helpful to the jury in understanding the delay by R.P. in reporting the first
instance of sexual abuse, and this type of evidence has been held relevant in child
sexual abuse cases. See Cohn v. State, 849 S.W.2d 817, 819-21 (Tex. Crim. App.
1993). We therefore conclude that the trial court did not abuse its discretion in
allowing Dr. Rambur’s expert testimony regarding child sexual abuse victims’
delayed outcry. 
          Next, Dr. Rambur testified that sexual predators will often test their child
victims, a process known as “grooming,” which involves escalating sexual behavior. 
She further testified that often times a sexual predator will admit portions, but not all,
of the alleged misconduct in an effort to minimalize and rationalize their misbehavior. 
          Dr. Rambur testified as to the common characteristics and situations of
“grooming” and partial admittance of improper conduct, which she had observed and
studied during her lengthy practice. Here, Perez admitted to improper tickling,
pinching of R.P.’s buttocks, and the removal of R.P.’s underwear, followed by
tickling and blowing in a videotaped interview. These characteristics and situations
are similar to those that Dr. Rambur described, and therefore her testimony was
relevant and helpful to the jury. We conclude that the trial court did not abuse its
discretion in admitting Dr. Rambur’s testimony regarding certain habitual
characteristics of sexual predators.
Sufficiency of the Evidence
          In both cases, Perez challenges the legal and factual sufficiency of the evidence
to support his convictions for aggravated sexual assault. “In a legal sufficiency
review, we view all of the evidence in the light most favorable to the verdict and then
determine whether a rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.” Escamilla v. State, 143 S.W.3d 814, 817 (Tex.
Crim. App. 2004). “In a factual sufficiency review, we view all of the evidence in a
neutral light, and we will set the verdict aside only if the evidence is so weak that the
verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong
that the standard of proof beyond a reasonable doubt could not have been met.” Id.
(citing Zuniga v. State, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004)). In a factual
sufficiency review, we may not substitute our own judgment for that of the fact
finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).In his fourth and fifth issues in both causes, Perez challenges the legal
sufficiency of the evidence because the complainant’s testimony was not credible. 
The finder of fact, not the appellate court, is the sole judge of credibility. See
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing Jones, 944 S.W.2d
at 648). This is not a case in which the credibility of the complainant is so
undermined that we have no confidence in the verdict. We therefore overrule his
fourth issue in both causes. 
          In his fifth issue in both causes, Perez challenges the factual sufficiency of the
evidence on the basis that complainant’s testimony was not credible. It is the
responsibility of the trier of fact to reconcile inconsistent or contradictory witness
testimony. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986) (citing
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982)). The jury may
choose to believe a portion of a witness’s testimony and reject other portions. Id. 
Additionally, the jury is the exclusive judge of the credibility of the witnesses and the
weight given to their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim.
App. 1994) (citing Lafoon v. State, 543 S.W.2d 617, 620 (Tex. Crim. App. 1976)). 

          Here, we have R.P.’s testimony that Perez tickled, touched, and inserted his
fingers into her vagina. R.P. also testified that Perez had taken off her pants and
underwear, spread her legs apart, and put his tongue inside her vagina. Perez
admitted to Deputy Telles that he often tickled R.P., including between her legs. He
also admitted to Deputy Telles that he took off R.P.’s underwear and blew on her
belly, between her belly button and her vagina. Finally, Perez admitted to a
caseworker at the center that he had tickled R.P.’s vagina, and that he had opened her
legs and vagina in order to check to see if her period was coming. During trial,
however, Perez denied the allegations. 
          The jury was free to believe the complainant’s testimony, and disbelieve 
Perez’s trial testimony. McKinny v. State, 76 S.W.3d 463, 468-69 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). The jury could also find the testimony of
the caseworker and Perez’s videotaped interview with Deputy Telles to be
particularly credible. We note that in sexual abuse cases involving children, the child
victim’s testimony alone is sufficient to support a conviction. See Jordan-Maier v.
State, 792 S.W.2d 188, 190 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d). 
Accordingly, this evidence is factually sufficient to support Perez’s convictions for
aggravated sexual assault. 
          In Perez’s sixth and seventh issues in cause number 01-04-00161-CR, he
challenges the legal and factual sufficiency of the evidence to show that he contacted
the complainant’s sexual organ with his mouth, as alleged in the indictment. 
Specifically, he contends that the indictment alleges that Perez used his mouth to
contact R.P.’s sexual organ and, at trial, R.P. testified that Perez placed his tongue
inside her vagina. According to Perez, this distinction between “mouth” and
“tongue” creates a fatal variance. The State responds that no variance exists because
the tongue is part of the mouth. 
          We agree with the State. “Common sense and common usage leads us to
conclude that the legislature intended the word ‘mouth’ to include its parts, such as
teeth and tongue.” Johnson v. State, 882 S.W.2d 39, 41 (Tex. App.—Houston [1st
Dist.] 1994, pet. ref’d). As such, no variance exists because “mouth” includes the
tongue for purposes of the sexual assault statute prohibiting a person from
intentionally or knowingly causing the sexual organ of a person under fourteen years’
old to contact or penetrate the “mouth” of another person. See id. 
          R.P. testified that Perez pulled down her pants and underwear, spread her legs
apart, and put his tongue inside her vagina. As noted above, the testimony of a sexual
assault victim alone is sufficient evidence to support a sexual assault conviction. See
Jordan-Maier, 792 S.W.2d at 190. After reviewing the entire record, we conclude
that a rational trier of fact could have found that Perez committed aggravated sexual
assault of a child by causing his mouth to touch R.P.’s sexual organ. We therefore
hold that the evidence is legally and factually sufficient to support his conviction for
aggravated sexual assault in cause number 01-04-00161-CR. 
Conclusion
 
          After reviewing the entire record, we conclude that (1) the trial court did not
err in admitting Dr. Rambur’s expert testimony; and (2) the evidence is legally and
factually sufficient to support both of Perez’s convictions. We therefore affirm the
judgment of the trial court. 
 
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).