Opinion issued February 8, 2007













     




In The
Court of Appeals
For The
First District of Texas




NOS. 01–06–00430–CR
          01–06–00431–CR




MAYNOR GIOVANNI MELGAR, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause Nos. 1040823 & 1065883



 
MEMORANDUM OPINIONAppellant, Maynor Giovanni Melgar, was charged in two separate indictments
with aggravated sexual assault of a child, to which he pleaded not guilty. See Tex.
Pen. Code Ann. § 22.021 (Vernon Supp. 2006). A jury found appellant guilty and
assessed punishment at 40 years’ confinement in each count, with sentences to be
stacked. In one issue, appellant challenges the factual sufficiency of the evidence to
support his convictions. 
          We affirm.
Background
          In June of 2004, Manuel and Teresa divorced. Their daughter, the
complainant, S.L., was five years old at the time. Manuel and Teresa agreed that S.L.
would live with Teresa and her minor son from a previous marriage, V.L. In addition,
they agreed that, every Friday, Manuel would pick up S.L. for weekend visits.
          At some point during the months leading up to or just after the divorce (the
facts are in dispute), Teresa met appellant. Appellant told Teresa that his name was
Carlos Martinez. Appellant was also known by the nickname, “Pelon.” In July of
2004, Teresa began to date appellant. The facts are in dispute as to whether appellant
eventually moved in and lived with Teresa and the children. 
          On September 11, 2004, according to S.L., appellant drove her to his apartment
while Teresa was at work. Appellant brought S.L. into his bedroom, made her lie on
his bed, and took her clothes off. S.L. stated that appellant put his finger in her “pee-pee side” and “then he was starting to move it.” S.L. said, “He cleaned it with a towel
and he put oil on me and then he cleaned it with a towel.” S.L. testified that appellant
threatened to kill her if she told her father. 
          On Friday, September 27, 2004, Manuel picked up S.L. for a weekend visit, as
usual. On that date, however, S.L. was acting notably sad. S.L. told Manuel that
appellant “was molesting her, touching her in all the wrong places.” Manuel reported
the information to the police. In addition, Manuel called the Texas Department of
Family and Protective Services (referred to as “CPS”), but the office was closed. S.L.
stayed with Manuel over the weekend.
          On Monday, September 30, 2004, Manuel spoke with CPS and a CPS
representative went to Meyer Elementary School, where S.L. attended kindergarten,
and talked with S.L. Afterward, S.L.’s teacher, Laura Eickstead, asked S.L. if she
wanted to talk. S.L. answered in the affirmative and stated that a man had touched
her. Eickstead brought S.L. to see the school counselor, Devota Van Pelt. 
          Van Pelt said that, on September 30, 2004, Eickstead brought S.L. in to talk
with her and that S.L. seemed sad. Van Pelt drew S.L. into conversation, and S.L.
eventually pointed to her genital area and stated that she had been touched
inappropriately. Van Pelt gave S.L. a doll and asked her what had happened. S.L.
laid the doll down, spread her legs, put her index finger to the genital area, and
rotated her finger. Van Pelt asked S.L. who had done that to her, and S.L. responded
that a man named “Pelon” had done it. Van Pelt asked how many times he had done
that to her, to which S.L. flashed her fingers in a manner that Van Pelt understood to
mean that it had occurred many times. 
          According to Eickstead and Van Pelt, S.L.’s behavior became erratic after
September 30. Eickstead stated that, prior to that date, S.L. had been making normal
adjustments to attending school. However, after that date, S.L. began having severe
outbursts in class, cried continually, and would bolt from the classroom. Van Pelt
said that S.L. would come to Van Pelt’s office 10 or more times a day. 
          Van Pelt testified that a few days after September 30, Manuel came to school
to let them know that S.L. would be living with him. Van Pelt said that Manuel was
very supportive and was extensively involved with S.L. Van Pelt said that she met
with Teresa to discuss getting more counseling for S.L. and that Teresa declined,
stating, “It happened, it’s over, it’s done, and we need to move on.”
          On October 6, 2004, Manuel and Teresa met with CPS representative
Roshandra Stewart at the Children’s Assessment Center (“CAC”), and an agreement
was reached as to how to protect S.L. Stewart testified that, at the meeting, Teresa
stated that appellant had been living with her and the children for the preceding four
months. Teresa, Manuel, and Stewart agreed that S.L. would reside with Manuel until
Teresa went home and asked appellant to leave and until Stewart could verify that
appellant was no longer there. Stewart said that, the next week, she went to Teresa’s
home, determined that appellant was not there, and allowed S.L. to return home. 
Manuel and Teresa resumed the original weekend visitation schedule.
          On May 25, 2005, according to S.L., Teresa was at work and S.L. was at home
watching a movie in her room with V.L. Appellant, who had apparently returned to
the house, was with the children. V.L. was seated in the bottom of the children’s
bunk bed, and S.L. was sitting on the top bunk with appellant. S.L. testified that
appellant reached into her shorts and “touched [her] at [her] butt.” S.L. explained that
appellant put his hand underneath her underwear and put his finger inside her anus.
S.L. testified that it hurt badly, and that she grabbed appellant’s hand and moved it
away. 
          Days later, Manuel picked up S.L. for a weekend visit and noted that she was
acting like something was bothering her. Once Manuel and S.L. had driven about a
block away from Teresa’s house, S.L. told Manuel that appellant was back at the
house and that he was touching her again. Manuel asked S.L. if she had told her
mother. S.L. replied that she had, but that Teresa had not believed her.
          The September 2004 incident was referred to Harris County Sheriff’s Detective
Wallace Dennis for investigation, but he misplaced the file until the May 2005
allegation was referred to him. After the May incident, Detective Dennis referred
S.L. to CAC. 
          Appellant was charged with aggravated sexual assault of a child for each of the
incidents.


 The jury found appellant guilty on both counts. This appeal followed. Factual Sufficiency
          In his sole issue, appellant contends that the evidence is factually insufficient
to support his convictions because “[t]he State’s evidence in this case has been
thoroughly impeached and totally rebutted by cross-examination of State witnesses
and by defense witnesses leaving no credible evidence that Appellant sexually
assaulted complainant as alleged in both indictments.” Specifically, appellant
contends that (1) there is no medical evidence to substantiate the allegations; (2)
S.L.’s testimony that appellant was at her house and that he drove her to his home was
refuted; (3) Detective Dennis testified that Manuel had previously asked S.L. to
falsify information to CPS; and (4) there is evidence that Manuel had threatened
appellant with criminal charges.
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 & n.8 (Tex. Crim. App. 1997). 
We will set the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 408–09 (Tex. Crim. App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict. Id. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 
              We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact-finder’s evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408–09. As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5.
          A person commits aggravated sexual assault of a child 
if the person intentionally or knowingly causes the penetration of the
anus or sexual organ of a child by any means; . . . if . . . the victim is
younger than 14 years of age. 

 
Tex. Pen. Code Ann. § 22.021(a)(1)(B), (a)(2)(B). A “child” is a person under 17
years of age who is not the spouse of the actor. Id. § 22.011(c).

          First, the State offered evidence that appellant committed two acts of sexual
assault of a child. Regarding the first incident, which occurred on September 11,
2004, S.L. testified that appellant drove her to his apartment, brought her into his
bedroom, made her lie on his bed, and took her clothes off. S.L. testified that
appellant penetrated her “pee-pee side” with his finger. The evidence shows that S.L.
used the term “pee-pee side” to refer to her sexual organ and that S.L. was five years
old at the time of the incident. 

          Regarding the second incident, which occurred on May 25, 2005, S.L. testified
that she was at home in her room watching a movie with appellant and V.L. while her
mother was at work. V.L. was seated in the bottom of the childrens’ bunk bed and
S.L. was sitting on the top bunk with appellant. S.L. testified that appellant reached
into her shorts and “touched [her] at [her] butt.” S.L. testified that appellant put his
hand underneath her underwear and penetrated her anus with his finger. The
evidence shows that S.L., who was born on April 30, 1999, had just turned six years
of age at the time of the incident.

          Hence, the jury could have reasonably concluded that, on these two occasions,
appellant intentionally or knowingly caused the penetration of the sexual organ or the
anus of a victim younger than 14 years of age. See id. § 22.021(a)(1)(B), (a)(2)(B). 

          First, appellant contends that S.L.’s testimony is not sufficient, without medical
evidence, to support his conviction. The evidence shows that a medical exam was
performed on S.L. in May of 2005, which revealed no abnormal findings. However, 
as the State contends, it was not required to present medical evidence to corroborate
S.L.’s allegations. See Sandoval v. State, 52 S.W.3d 851, 854 & n.1 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). Pursuant to Texas Code of Criminal
Procedure, article 38.07, a conviction under section 22.021 of the Penal Code “is
supportable on the uncorroborated testimony of the victim if the victim informed any
person, other than the defendant, of the offense within one year after the offense is
alleged to have occurred.” Tex. Code Crim. Proc. Ann. art. 38.07(a)-(b) (Vernon
2005); see Jordan-Maier v. State, 792 S.W.2d 188, 190 (Tex. App.—Houston [1st
Dist.] 1990, pet. ref’d). The requirement that the victim inform another person of the
offense within a year does not apply when, as here, the victim was 17 years of age or
younger at the time of the offense. See Tex. Code Crim. Proc. Ann. art. 38.07(a)-(b). Moreover, the evidence shows that S.L. reported the September 11, 2004
incident to Manuel on Friday, September 27, 2004, and to her teacher, Eickstead, and
her counselor, Van Pelt, on September 30, 2004. In addition, the evidence shows that
days after the incident on May 27, 2005, S.L. reported the occurrence to Manuel. 

          Second, appellant contends that S.L.’s testimony was not credible. 
Specifically, appellant contends that S.L.’s testimony that appellant assaulted her at
her house and that he assaulted her at his apartment was refuted by his own testimony
and by the testimony of Teresa and V.L. 

          Appellant testified that he met Teresa in mid-July of 2004 and that they stopped
dating on October 8, 2004. Appellant testified that he and Teresa spent their time
together at a motel, that he had not lived with her, and that, in fact, he had never been
in Teresa’s house. In addition, appellant testified that he had never met S.L. Notably,
however, S.L. was able to identify appellant in the courtroom during trial. Appellant
testified that he had only seen V.L. one time because Teresa said that her children
would not accept him. However, V.L. testified that he and his mother spent time
with appellant and that appellant did come to Teresa’s house on occasion. 

          V.L. testified that appellant had not lived with them and offered that his “little
sister . . . lies a lot.” Teresa testified that appellant had not lived with her and that
appellant had never been left alone with S.L. However, the evidence also shows that,
on October 6, 2004, Teresa reported to CPS representative Stewart that appellant had
been living at her house for four months and that the only thing she knew about him
was his name—and that she was not sure that it was his correct name. Stewart
testified that Teresa agreed to have S.L. stay with Manuel until Teresa could go home
and ask appellant to leave. Stewart went to Teresa’s home the following week,
verified that appellant was not living there, and permitted S.L. to return to Teresa’s
home. The jury, who is the sole judge of the credibility of the witnesses, was free to
believe some testimony and to disbelieve other testimony. See Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000); Sandoval, 52 S.W.3d at 855. 

          Third, appellant contends that the testimony of Detective Dennis shows that
Manuel asked his daughter to falsify information to CPS. Detective Dennis testified
that an offense report in this case shows that CPS caseworker Harriet Thomas called
Deputy Q. Young and told him that “the father allegedly put the complainant up to
making the allegations.” However, a close examination of the testimony of Detective
Dennis also shows that he testified that the notation in the offense report was
incorrect. Detective Dennis explained that this notation belonged in a 1996 report
that had no relation to this case. S.L. was not born until April 30, 1999. This
testimony was supported by Harriet Thomas, who testified that she was never
involved with S.L.’s case and had not spoken with Deputy Young. The record also
shows, however, that Thomas testified that she did not work for CPS in 1996, which
tends to contradict Dennis’s assertion that Thomas’s notation belonged in a 1996
report. Even if contradictory testimony was presented, the fact-finder alone
determines what weight to place on contradictory testimonial evidence because that
determination depends on the fact-finder’s evaluation of credibility and demeanor. 
Cain, 958 S.W.2d at 408–09. 

          Finally, appellant contends that, on September 10, 2004, he had a confrontation
with Manuel in the parking lot of Teresa’s apartment during which Manuel threatened
to file false charges. Appellant explained that he believed that Manuel was angry at
him for dating Teresa. Teresa and V.L. testified that they heard Manuel threaten to
file criminal charges against appellant during the confrontation. However, Teresa
also testified that the conversation took place across a parking lot and that she is
hearing impaired. Again, the jury was free to believe all, some, or none of the
testimony offered. See id. at 407 n.5.

          The jury is the sole judge of the facts, the credibility of the witnesses, and the
weight to be given the witnesses’ testimony. See Margraves, 34 S.W.3d at 919. In
this case, the jury made the determination that S.L.’s testimony was credible. After
reviewing all of the evidence in a neutral light, we cannot conclude that the evidence
is so weak that the verdict is clearly wrong and manifestly unjust or that the verdict
is against the great weight and preponderance of the evidence. Johnson, 23 S.W.3d
at 11. We hold that the evidence is factually sufficient to support appellant’s
convictions. 

          Accordingly, we overrule appellant’s sole issue in each appellate cause. 

Conclusion

          We affirm the trial court’s judgments.  



 



                                                             Laura Carter Higley

                                                             Justice

 
Panel consists of Justices Nuchia, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).