

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1265-13

**CAIN BRUTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### DENTON COUNTY

**KELLER, P.J., delivered the opinion of the unanimous Court.**

In this case, we must determine whether two State's exhibits that purport to be foreign public

documents or records were properly authenticated under Rules of Evidence 902(3) and (4).[1]

Although the documents meet some of the requirements of the rules, we hold that the documents

---

[1] The State's first ground for review asks: "Whether the Court of Appeals erred by determining that the trial court abused its discretion in admitting official documents from the United Kingdom because the exhibits were not certified under Rule 902(4) and lacked a 'final certification' under evidence Rule 902(3) and the State did not establish good cause to dispense with the final certification requirement under Rule 902(3)."

were not properly authenticated because neither was accompanied by a final certification from a diplomatic or consular official specified in Rule 902(3) and because good cause for failing to obtain a final certification was lacking.[2] Consequently, we affirm the judgment of the court of appeals.[3]

---

[2] TEX. R. EVID. 902(3) and (4) provide:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \*

**(3) Foreign Public Documents.** A document purporting to be executed or attested in an official capacity by a person, authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification. The final certification shall be dispensed with whenever both the United States and the foreign country in which the official record is located are parties to a treaty or convention that abolishes or displaces such requirement, in which case the record and the attestation shall be certified by the means provided in the treaty or convention.

**(4) Certified Copies of Public Records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2) or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.

[3] Due to our disposition of the case, we do not address the State's second ground for review, which asks: "Whether the Court of Appeals erred by holding that Appellant could be linked to Exhibit 13 *only* by State's Exhibit 11/14 where State's Exhibit 12/15 also provided

## I. BACKGROUND

### A. The Exhibits

The parties agree that appellant's first name is Peter.[4]  At issue here are three exhibits that purport to be documentary evidence of prior convictions of a Peter Bruton from the United Kingdom.[5]  State's Exhibit 13 consists of a letter and three "certificates of conviction" purporting to be from the Norwich Crown Court.  The letter, addressed to the Denton County District Attorney and signed by a person purporting to be a caseworker from that court, directs the District Attorney to the  "enclosed Certificates of Conviction as requested" for a "Peter Bruton" with a date of birth matching appellant's.  The certificates of conviction "certify" a "Peter Bruton," with a date of birth matching appellant's, as having a total of twelve convictions for "indecent assault on a female."  The certificates are each signed, with the title "Officer of the Crown Court" underneath the signature.  The letter and the certificates of conviction display a depiction of a crown with a lion and a unicorn, and all four documents provide case numbers for the convictions.  The certificates of conviction are dated October, 31, 2008, and the letter referring to those certificates says that the certificates are enclosed in response to the District Attorney's letter of October 17, 2008.

---

sufficient links to convince a jury that the person who had been convicted of offenses in the United Kingdom, as certified in State's Exhibit 13, was the same person who committed the Denton County offenses."

[4] Defense counsel admitted to such at trial, and we note that appellant has styled the case name on his brief on discretionary review as "Peter Cain Bruton v. State."

[5] State's Exhibits 11 and 12 were redacted, pursuant to requests from defense counsel, to eliminate extraneous material.  The redacted versions of these exhibits are State's Exhibits 14 and 15 respectively.  These exhibits were redacted after the hearing on their admissibility, so the parties referred to the unredacted versions.  For the reader's convenience, we refer to the redacted versions in our discussions, even when discussing the parties' references to the exhibits, unless the context requires otherwise.

State's Exhibit 14 purports to be an Interpol computer printout that contains a fingerprint card and list of twelve convictions in the United Kingdom. The convictions purport to relate to a "Peter Kane Bruton" with a date of birth matching appellant's. The individual is identified as a carpenter, with addresses in Norwich (United Kingdom) and Carrollton (United States).[6] The printout describes the individual as having a stocky build, blue eyes, and short, straight, dark brown hair. The fingerprint card contains rolled impressions for a "Peter Bruton" with a date of birth matching appellant's.

State's Exhibit 15 consists of a letter on "Norfolk Constabulary" letterhead and a computer printout. The letter is addressed to the Denton County District Attorney's Office and is signed by someone purporting to be a Data Protection Disclosure Unit Officer of the Professional Standards Department. The letter states:

> I write in reply to your letter dated 25th May 2010 in which you have requested access to all information in relation to the above criminal prosecution such as statements and reports for enhanced purposes only and not specifically the criminal prosecution. At this stage, the request appears to be excessive for the purpose and as such I am not prepared to release all of the reports, statements and record of interview. I am however, prepared to release a redacted copy of the Case Summary – I shall remove the names of the victims/witnesses. The Case Summary is produced by the officer in charge and is presented to the Crown Prosecution Service to decide whether or not an individual should be charged. It is a summary of the witness statements, events/allegations and the interview with the suspect. I have also enclosed a copy of the above individual's conviction history which will show the outcome of the above prosecution.
>
> In your letter you have requested 'Certified Copies'. I am afraid I am unable to provide this as we do not have a 'Norfolk Constabulary' stamp, however I have stamped the first pages with 'Professional Standards' which is the department in

---

[6] The Carrollton address listed on the printout matches appellant's address in Carrollton, except that a letter stands in place of the last numerical digit of the house number.

which I work.[7]

The computer printout is stamped "professional standards," identifies a "Peter Kane Bruton" with a date of birth matching appellant's, identifies the individual as a carpenter, identifies a Norwich address for the person (same as in State's Exhibit 14), and contains a list of twelve convictions for "indecent assault on female under 16."

Evidence at the guilt phase of trial indicated that appellant was a carpenter and that the Norwich address identified in State's Exhibits 14 and 15 matched an address at which appellant had resided. There was testimony at the punishment phase of trial that fingerprints obtained from appellant in Texas matched those found in State's Exhibit 14.

### B. Admissibility Hearing

The State sought to introduce the three exhibits at the punishment stage of trial.[8] In a hearing outside the presence of the jury, appellant objected that the documents had not been properly authenticated, were hearsay, and had not been sufficiently connected to appellant. With respect to the authentication question, appellant complained that the documents were not self-authenticating. He argued that the documents were "not certified" and contained "some identifying characteristics that are not correct" including misspelling appellant's name, giving an incorrect Carrollton address, describing the person as "stocky," and describing the person as having dark brown hair. Appellant also complained that the documents did "not contain any language or any kind of judgment that we

---

[7] This is the unredacted version of the letter, found in State's Exhibit 12. Three sentences were redacted in the version found in State's Exhibit 15.

[8] Appellant was convicted of aggravated sexual assault of a child and indecency with a child by contact. He was ultimately sentenced on these counts to life and twenty years' imprisonment respectively.

would be familiar with here in Texas or in the United States," did not refer to any cause numbers, lacked a seal, and, in some instances, bore illegible signatures. Appellant acknowledged that he had received copies of State's Exhibits 13 and 15 "some time ago" but maintained that he had never seen a copy of State's exhibit 14 until the day of the hearing. Appellant also contended that no one was going to testify about who printed the document in State's Exhibit 14 or where it came from.

The State responded that the documents were admissible under Rules of Evidence 902(3) and 902(4).[9] The State specifically pointed to the "good cause" portion of Rule 902(3) and to the letter from the Professional Standards Department of the Norfolk Constabulary as satisfying the requirement. The State also contended that the combination of information found in the various documents was sufficient to tie appellant to those documents.

Appellant and the trial court also briefly discussed "good cause" as it applied to State's Exhibit 15. What appellant's position was in this discussion is unclear, though he seemed to acknowledge that the data-protection officer could not certify something because the Norfolk Constabulary did not have a stamp. Although the clarity of appellant's arguments is clouded by a number of interruptions, appellant appears to have been claiming that, though there might be good cause for the lack of certification on State's Exhibit 15, State's Exhibit 15 was not sufficiently connected to State's Exhibit 13.

The trial court held that State's Exhibit 13 was certified, remarking that the documents did contain cause numbers and a seal. The trial court commented that State's Exhibit 14 should be treated like an NCIC or TCIC printout. With respect to State's Exhibit 15, the trial court remarked that it was arguably certified because of the "professional standards" stamp, but if it was not

---

[9] *See* TEX. R. EVID. 902(3), (4).

certified, the letter gave good cause because the Norfolk Constabulary does not have a stamp. The

trial court and the State discussed the fact that various documents gave the correct name, date of

birth, occupation, and Norwich address[10] for appellant, which served to tie the documents to him.

The trial court admitted all three exhibits.

## C. Appeal

### 1. *Arguments of the Parties*

On appeal, appellant complained that the State failed to properly authenticate the exhibits.

He argued:

> [T]his evidence did not come in the form of a conventional judgment and sentence,
> properly authenticated or testified to by a witness. Rather, the State cobbled together
> several different documents, including what appear to be computer printouts and
> letters from clerks of English courts of undetermined origin . . . . The evidence of the
> foreign convictions did not pass admissibility muster for the prosecution of any crime
> because the documents used by the State bore no proper authentication; in fact, much
> of the information included in the various documents was flat wrong or could not be
> shown to connect Appellant to the alleged offenses . . . . Like the documents used
> here by the State to show Appellant's alleged previous convictions for child abuse,
> the State in *Banks* could not rely on self-authentication because the documents were
> not properly under seal . . . . The State's reliance on Tex. R. Evid. 902(3) in
> Appellant's case was also misplaced because not all of the documents used by the
> State—and admitted by the trial court—constituted documents that could satisfy the
> conditions of Rule 902(3). Rather, the trial court allowed the State to cobble together
> disparate documents with uncertified letters purporting to be from the English court
> in order to "authenticate" the entire group of documents, including uncertified
> computer printouts.

The State argued that the trial court did not abuse its discretion in finding the documents to

be authentic because an "Officer of the Crown Court attested that the documents were certified, and

. . . a caseworker in Norwich Crown Court provided a further indication that the Certificates of

---

[10] The prosecutor referred to a "Norfolk" address, but the record is clear that the address at which appellant resided and to which the documents referred was in Norwich.

Conviction were genuine." The State concluded that "State's Exhibit 13 was certified, State's Exhibit [15] arguably was certified by an official, and there was good cause to believe State's Exhibits [14 and 15] could be found authentic by the jury."

In his reply brief, appellant cited the language in Rule 902(3) regarding a chain of certificates of genuineness and argued that the three exhibits "do not appear on their face to form any specific chain of foreign documents, and no witness testified about any purported connection between the three documents." Appellant further argued that the State "failed to present any evidence that [the] purported clerk of Norwich Court who signed Exhibit 13 (but did not certify it), was, in fact, the clerk of that court."

## 2. *Opinion of the Court of Appeals*

Holding that State's Exhibits 13 through 15 were not properly authenticated, the court of appeals reversed and remanded for a new punishment hearing.[11] The court of appeals first analyzed the documents under Rule 902(3).[12] The court of appeals held that State's Exhibit 14 was a "barebones computer printout[]" that was "not self-authenticating" under Rule 902(3) because it was "not executed or attested in an official capacity by anyone and there is no final certification."[13] The court of appeals acknowledged that State's Exhibit 15 contains a cover letter signed by someone with the title of "Data Protection Disclosure Unit Officer" but held that the exhibit "lack[s] the final

---

[11] *Bruton v. State*, No. 08-11-00316-CR, slip op. at 16-20, 21 (Tex. App.–El Paso August 7, 2013, pet. granted) (not designated for publication).

[12] *Id.* at 16-17.

[13] *Id.* at 16.

certification required by Rule 902(3)."[14]  With respect to Exhibit 13, the court of appeals held that, while the exhibit was executed by an "Officer of the Crown Court," it "lacks a final certification."[15] The court of appeals further held that the State "did not offer any evidence supporting a finding of good cause to dispense with the [final] certification requirement" and "there is no evidence that there is a treaty or convention between the United States and the United Kingdom that abolishes the certification requirement or provides for a different certification."[16]

The court of appeals next analyzed the documents under Rule 902(4).  The court first held that State's Exhibit 14 did "not contain any type of certification."[17]  Although State's Exhibit 15 contained a cover letter signed by a "Data Protection Disclosure Unit Officer," the court held that "the officer does not certify any of the facts required by Rule 902(4)."[18]  And though State's Exhibit 13 was executed by an "Officer of the Crown Court," the court of appeals held that "the exhibit lacks a certificate in the form required by Rule 902."[19]  Further, the court of appeals held, even if State's Exhibit 13 complied with Rule 902(4), it was nevertheless inadmissible "because the State cannot link Appellant to the convictions in that exhibit" due to the failure to authenticate State's Exhibit 14.[20]  The court of appeals considered State's Exhibit 14 to be the "linchpin" in the analysis because

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 16-17.

[17] *Id.* at 17.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 17-18.

it included the fingerprint card that the State used to compare to appellant's known fingerprints.[21]

### D. Discretionary Review

### 1. *State's Arguments*

With respect to Exhibit 13, the State complains that the court of appeals "did not specify how the exhibit lacked the form specified by the rule" and "offered no cogent reason why it should not have deferred to the trial court's ruling regarding the exhibit's authenticity." The State argues that the documents in State's Exhibit 13 contained "sufficient indicia of certification" because they were "attested to be certified by a caseworker of the Norwich Crown Court, contained statements indicating the documents were for certification purposes, bore the signature of an Officer of the Crown Court, and bore an official seal." The State further argues that, even if the exhibit was not properly certified, "there was good cause to find the exhibit was presumptively authentic without final certification." The State points to the fact that the documents had been provided to appellant prior to trial and that appellant offered no evidence casting doubt on the exhibit's authenticity. The State also observes that State's Exhibit 13 "had Appellant's correct name and date of birth."

Pointing to the cover letter from the data-protection officer in State's Exhibit 15, the State contends that the letter explained why the records in that exhibit "were not 'certified' in the strictest sense of the word" (State's language) because the Norfolk Constabulary did not have an official stamp. The State observes that the exhibit correctly identified appellant by name, date of birth, sex, address in Norwich, and occupation as a carpenter, and that it contained the same conviction history found in State's Exhibit 13. The State also observes that appellant made no complaint, with respect to State's Exhibit 15, about the notice given by the State to the defense.

---

[21] The court of appeals also conducted a harm analysis, which is not at issue here.

The State does not complain about the court of appeal's ruling that State's Exhibit 14 is inadmissible. At oral argument, the State explained that this was based on appellant's complaint that he had not been shown State's Exhibit 14 until the day of the hearing. The State does, however, contest the court of appeals' holding that State's Exhibit 14 was needed to link appellant to the prior convictions listed in State's Exhibit 13.

### 2. *Appellant's Arguments*

Appellant's arguments largely track those he made to the court of appeals, but he makes three additional arguments. First, he takes the State to task for emphasizing the importance of State's Exhibit 14 at trial but now downplaying its significance. Second, he contends that the "good cause" exception in Rule 902(3) cannot apply because it is triggered only if the trial judge "orders" the document to be treated as presumptively authentic without a final certification. Finally, he contends that, without State's Exhibits 14 and 15, there would not have been sufficient proof to tie State's Exhibit 13 to him.

## II. ANALYSIS

A review of the record at trial, on appeal, and on discretionary review leads us to the conclusion that the trial court and the parties have misconstrued, in various ways, the meaning and application of Rules 902(3) and 902(4). Consequently, we take this opportunity to clarify the meaning of the rules.

### A. General Principles of Construction

In construing a court rule, we attempt to effectuate the plain language of the rule unless there

are important countervailing considerations.[22] Unlike the *Boykin*[23] standard for construing statutes, the standard for construing court rules permits the consideration of extratextual factors, even if the text of the rule is not ambiguous and does not lead to absurd results.[24] When a Texas rule of evidence is patterned on a federal counterpart, we find it appropriate to look to federal cases and commentary for guidance.[25] The comments from the Federal Advisory Committee are often especially helpful,[26] but we also find it useful to examine how federal courts have been construing the federal rule.[27] We may also look at decisions in courts of other states that have a version of the rule that is also patterned after the federal rule.[28]

---

[22] *Nava v. State*, 415 S.W.3d 289, 306 (Tex. Crim. App. 2013).

[23] *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991).

[24] *Nava*, 415 S.W.3d at 306.

[25] *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

[26] *See McCarty v. State*, 257 S.W.3d 238, 240 n.5 (Tex. Crim. App. 2008) (construing Texas Rules of Evidence 803(1) and (2), finding a study of the federal rules "helpful," and referring to a Federal Advisory Committee Notes); *Hernandez v. State*, 176 S.W.3d 821, 824 n.5 (Tex. Crim. App. 2005) (construing Texas Rule of Evidence 404(b), citing the Federal Advisory Committee Notes, and finding the "interpretation of federal rules persuasive in interpreting comparable state rules"); *Fairow v. State*, 943 S.W.2d 895, 902 n.3 (Tex. Crim. App. 1997) (construing Texas Rule of Criminal Evidence 602 and concluding that "we may rely on the Federal Rules Advisory Committee Notes to interpret our rules").

[27] *See Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (construing Texas Rule of Evidence 801(e)(1)(B) and stating that "federal decisions provide helpful analysis"); *Tamez v. State*, 11 S.W.3d 198, 201 (Tex. Crim. App. 2000) (construing Texas Rule of Evidence 403 and finding that, "even when not bound by federal court decisions, when the Texas Rule duplicates the Federal Rule, greater-than-usual deference should be given to the federal court's interpretations"); *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991) (in construing state Rules of Criminal Evidence, which were patterned after the Federal Rules of Evidence, "we are guided by federal cases interpreting the federal rules, although not bound thereby").

[28] *See Schutz v. State*, 957 S.W.2d 52, 60 (Tex. Crim. App. 1997).

### B. Rule 902 Generally

Texas Rule 902 is titled "Self-Authentication" and it provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" if one of the subdivisions in the rule is satisfied.[29] This rule (including the subdivisions at issue in the present case) is modeled after Federal Rule of Evidence 902.[30] Along with other authentication rules, Federal Rule 902 is designed to ensure that a document that is admitted is "authentic rather than a forgery."[31] The rule addresses situations in which "the possibility of fraud, forgery and misattribution of certain documents is so slight that the general requirement of authentication by extrinsic evidence . . . is dispensed with."[32]

Rule 902 is not the only path to determining authenticity, and Rules 902(3) and (4) are not the only means of determining the authenticity of foreign documents.[33] Foreign documents may also be authenticated by extrinsic evidence under Rule 901.[34] The State, however, has not claimed that it has introduced extrinsic evidence of authenticity sufficient to satisfy Rule 901. We turn, then, to

---

[29] TEX. R. EVID. 902.

[30] *See* FED. R. EVID. 902(3), (4), and *passim*, 56 F.R.D. 183, 336-37 (1972).

[31] *Qui Yun Chen v. Holder*, 715 F.3d 207, 211 (7th Cir. 2013).

[32] *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982). *See also* FED. R. EVID. 902, Advisory Comm. Notes, 56 F.R.D. 183, 337 (1972) ("practical considerations reduce the possibility of unauthenticity to a very small dimension").

[33] *Qui Yun Chen*, 715 F.3d at 211.

[34] *Id.*; *Vatyan v. Mukasey*, 508 F.3d 1179, 1184 (9th Cir. 2007); *United States v. Pluta*, 176 F.3d 43, 49-50 (2d Cir. 1999); *Howard-Arias*, 679 F.2d at 366; *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F. Supp. 1190, 1226-27 (E.D. Pa. 1980); *Jordan-Meier v. State*, 792 S.W.2d 188, 192 (Tex. App.–Houston [1st Dist.] 1990).

Rules 902(3) and (4), upon which the State has relied in this case.

### C. Originals vs. Copies

The Federal Advisory Committee and various federal courts have recognized that Rule 902(3) applies to original foreign public documents while Rule 902(4) applies to certified copies.[35]

### 1. *Originals - Execution/Attestation*

Under Texas Rule 902(3), an original foreign public document is "[a] document purporting to be executed or attested in an official capacity by a person, authorized by the laws of a foreign country to make the execution or attestation."[36] Rule 902(3) also requires a "final certification," or an alternative to the final certification, which we will address later.[37] The Advisory Committee Notes to the federal rule explain that the rule was derived from Federal Rule of Civil Procedure 44(a)(2) "but is broader in applying to public documents rather than being limited to public records."[38] Some federal courts have held that the original document need not be signed or contain an attestation if there is a separate, signed document attesting to the genuineness of the original.[39] In a case decided before the Texas version of Rule 902 was adopted, the Fourth Circuit rejected, as formalistic, a claim that the official who executes or attests to the document must explicitly state that

---

[35] R. 902 Advisory Comm. Notes, 56 F.R.D. at 338 (paragraph (4)) ("documents provable when presented in original form under paragraphs (1), (2), or (3) may not be provable by certified copy under paragraph (4)"); *United States v. Firishchak*, 468 F.3d 1015, 1021 n.2 (7ᵗʰ Cir. 2006); *United States v. Doyle*, 130 F.3d 523, 545 (2ᵈ Cir. 1997); *Zenith Radio Corp.*, 505 F. Supp. at 1226.

[36] TEX. R. EVID. 902(3).

[37] *See id.*

[38] R. 902 Advisory Comm. Notes, 56 F.R.D. at 338 (paragraph (3)).

[39] *United States v. Deverso*, 518 F.3d 1250, 1255-56 (11ᵗʰ Cir. 2008); *United States v. Squillacote*, 221 F.3d 542, 561-62 (4ᵗʰ Cir. 2000).

he is the official authorized to do so.[40]  Rather, the court found it sufficient that the document purported to be executed in an official capacity by an authorized official.[41]  We also observe that the rule does not require that the foreign document or attestation bear a seal,[42] though a seal may be helpful in determining whether the document purports to be an official document of a foreign country.

### 2. *Copies - Certification of Correctness*

Under Texas Rule 902(4), which applies to certified copies of both foreign and domestic public records, a certified copy  is

> [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.[43]

To the extent that  it applies to copies of foreign documents, this rule appears to be narrower in scope than Rule 902(3) because it does not apply to all foreign public documents but only to those that qualify as "an official record or report . . . or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office."[44]  Scholarly commentary suggests that the limitation to *official* records, reports and recorded documents may have been intended to preclude

---

[40]  *Howard-Arias*, 679 F.2d at 366-67.

[41]  *Id.*

[42]  *See* TEX. R. EVID. 902(3).

[43]  TEX. R. EVID. 902(4).

[44]  *See id.*

using the certified-copy rule for a government entity's purely internal records, such as preliminary reports, random thoughts, ideas, etc.[45] However, the rule expressly allows a copy to be of a "data compilation."[46] In connection with the first mention of that term in the Federal Rules of Evidence, the Federal Advisory Committee defined the term "data compilation" to be "broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form . . . . [which] includes, but is by no means limited to, electronic computer storage."[47] A computer printout of information stored in an electronic database is a copy of a data compilation under Rule 902(4).[48]

Rule 902(4) also requires that the copy be "certified as correct" by the custodian "or other person authorized to make the certification."[49] By "certified as correct," the rule means that the copy is certified as a correct copy of the governmental record; the certification need not attest to the truth of the matters contained in that governmental record.[50] Also, the government-agency record, from which the certified copy is derived, need not itself be the original document, at least so long as the

---

[45] Michael H. Graham, EVIDENCE: TEXT, RULES, ILLUSTRATIONS, & PROBLEMS, Revised 2nd ed., 310 (1989) (commentary on FED. R. EVID. 902(4)).

[46] *See* TEX. R. EVID. 902(4).

[47] FED. R. EVID. 803, Advisory Comm. Notes, 56 F.R.D. 183, 311 (1972) (exception (6)).

[48] *United States v. Farris*, 517 F.2d 226, 228-29 (7th Cir. 1975).

[49] *Reed*, 811 S.W.2d at 585.

[50] *Doyle*, 130 F.3d at 545. *See also United States v. Watson*, 650 F.3d 1084, 1090 (8th Cir. 2011) (enough to certify that the documents are correct copies of the originals); *United States v. Weiland*, 420 F.3d 1062, 1068, 1073 (9th Cir. 2005) (same); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 337 (2009) (Kennedy, J., dissenting) (referring to the "long-accepted practice of authenticating copies of documents by means of a certificate from the document's custodian stating that the copy is accurate" and citing Rule 902(4)).

original document is also a public record.[51]   Also, the rule expressly provides that the person executing the certification of correctness need not be the custodian of the records as long as he is "authorized to make the certification."[52]   And Rule 902(4) does not, in connection with foreign records, require a seal of any sort.[53]

Finally, the certification of correctness, by which a copy is rendered certified, must itself satisfy Rule 902(1), (2), or (3).  "The certificate qualifies as a public document, receivable as authentic when in conformity with paragraph (1), (2), or (3)."[54]   That is, the certification of correctness is itself treated as an original public document.  As an original public document, the certification of correctness must comply with one of the subdivisions relating to original public documents.  Subdivisions (1) and (2) apply only to domestic documents, so when the certification of correctness purports to be for a copy of a foreign public record, that certification must satisfy Rule 902(3), which has an additional final certification (or certification alternative) requirement.[55]   As we have explained earlier, that additional requirement will be discussed later.[56]

### 3. *The Documents*

---

[51]   *Reed*, 811 S.W.2d at 586 (certified copies of judgments contained in pen packets qualified as self-authenticating under Rule 902(4)).

[52]   TEX. R. EVID. 902(4).

[53]   *See id.*; TEX. R. EVID. 902(3).  But a seal would be required if the document purported to be a copy of a domestic public record.  *See* TEX. R. EVID. 902(4) (referring to certificate complying with paragraph (1), (2), or (3) of the rule); TEX. R. EVID. 902(1), (2).

[54]   R. 902 Advisory Comm. Notes, 56 F.R.D. at 338 (paragraph (4)).

[55]   *Doyle*, 130 F.3d at 545; *Zenith Radio Corp.*, 505 F. Supp. at 1226.

[56]   *See* this opinion, footnote 37 and accompanying text.

At this point, we must determine whether State's Exhibits 13 and 15 are originals or copies, and whether they meet the requirements that we have discussed so far. The certificates of conviction in State's Exhibit 13 are dated after the District Attorney's inquiry to the Norwich Crown Court. They do not purport to be photocopies of records of the Norwich Crown Court; rather, they purport to be official public documents that were executed by an officer of the Crown Court and sent to the District Attorney's office. Thus, they purport to be *original* documents executed by someone with the authority to execute those documents. As such, they satisfy the execution/attestation requirement of Rule 902(3).[57]

The computer printout in State's Exhibit 15 appears to be a data compilation of information about a person's criminal convictions from a governmental database. As a data compilation, the computer printout purports to be a copy rather than an original. The letter in State's Exhibit 15 purports to be from a data-protection officer in the Norfolk Constabulary. That letter specifically states that a conviction history has been enclosed[58] and that the author has stamped the document "Professional Standards," which is the department in which the author works. The computer printout appears to be a conviction history and does indeed bear a "PROFESSIONAL STANDARDS" stamp, so we can infer that it is the conviction history referred to in the letter. Because a criminal conviction would ordinarily be a matter of public record and the data-protection officer characterized the computer printout as a "conviction history," the computer printout purports to be a copy of *official* records. The data-protection officer's letter also indicates implicitly that he has the authority to

---

[57] It might be argued that the documents are also data compilations of public records. We need not address whether they could qualify as certified copies under such a theory.

[58] This statement is found in the unredacted version of the letter, which was State's Exhibit 12, which the trial judge had before him at the time he made his ruling.

disclose the documents to which the letter refers. Given these circumstances, the computer printout satisfies the requirements of Rule 902(4) that we have discussed so far.

## D. Final Certification

### 1. *What the Rule Requires*

We now turn to the "final certification" requirement found in Rule 902(3). When a party seeks to admit a foreign public document, it must be accompanied by a "final certification." For an original foreign public document, this requirement must be satisfied with respect to the execution of the document or the attestation. For a certified copy, the requirement must be satisfied with respect to the certification of correctness.

Texas Rule 902(3) requires a "final certification" as follows:

> A document . . . accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States.[59]

The rule provides alternatives to this final certification requirement,[60] but for now, we examine whether the final certification requirement was met in this case.

### 2. *What the Final Certification Must Say*

The final certification must directly or indirectly vouch for the genuineness of the signature

---

[59] TEX. R. EVID. 902(3).

[60] *See id.*

and official position of the official who executes or attests to the foreign public document.[61]  This is the second of two basic requirements articulated by some federal courts for authenticating foreign documents: (1) there must be some indication that the *document* is what it purports to be, and (2) there must be some indication that the *official* vouching for the document is who he purports to be.[62]

### 3. *Who Must Make the Final Certification*

The rule says, "A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States."[63]  A casual observer who is unfamiliar with the rule might be confused regarding whether the word "may" in the sentence is permissive with respect to who may make the final certification.  That is, does the phrase "may be made" simply signify that these agents may make the certification but others may also, or does this phrase signify that these agents are the only agents authorized to make the final certification?  A review of the Federal Advisory Committee Notes and the caselaw establishes beyond any doubt that it is in fact the latter.

The Advisory Committee Notes to Federal Rule of Civil Procedure 44 (upon which Rule 902(3) was based) explain that the rule contemplates the final certification being made by "a United States foreign service officer . . . or a diplomatic or consular officer of the foreign country assigned

---

[61]  *See id.*; *Starski v Kirzhnev*, 682 F.3d 51, 53 (1st Cir. 2012); *Deverso*, 518 F.3d at 1256; *Squillacote*, 221 F.3d at 562; *Jordan-Maier*, 792 S.W.2d at 191.  By "indirectly," we mean the chain-certificate method in the rule, discussed in more detail below.

[62]  *Deverso*, 518 F.3d at 1256; *Squillacote*, 221 F.3d at 562.

[63]  Tex. R. Evid. 902(3).

or accredited to the United States."[64] The federal cases observe that the person who makes the final certification must be a diplomatic or consular agent from the list contained in Rule 902(3) (or Rule 44(a)(2)).[65] At least one Texas court of appeals has also recognized this to be true.[66] The idea behind this "final certification" method seems to be that courts and parties in this country may be unfamiliar with the official workings of another country but can consult the United States Department of State (or the appropriate U.S. Consulate), which presumably possesses expertise with respect to the foreign country. The required process of having a diplomatic or consular official associated with one's own country verify the status of an official in a foreign country for the purpose of authenticating a foreign document is sometimes called "the requirement of diplomatic or consular

---

[64] FED. R. CIV. P. 44, Advisory Comm. Notes, *Notes on 1966 amendments* (subdivision (a)(2)).

[65] *Qui Yun Chen*, 715 F.3d at 211 (Rule 902(3) "requires certification by U.S. or foreign diplomatic officials"); *Starski*, 682 F.3d at 53 (under Rule 902(3), final certification must be "by certain officials enumerated in the rules"); *Deverso*, 518 F.3d at 1256 (regarding Rule 902(3), "the rules require that one of a specified group of foreign officials must issue a final certification"); *Squillacote*, 221 F.3d at 562 (same); *Pluta*, 176 F.3d at 49 (certification under Rule 902(3) must be made "by a diplomatic or consular official of the United States or the foreign country"); *United States v. Garate-Vergara*, 942 F.2d 1543, 1553 (11th Cir. 1991) (Rule 902(3) "requires that foreign documents be certified by a consular agent of the United States"); *United States v. Serrate*, 534 F.2d 7, 10 (1st Cir. 1976) (under Rule 44(a)(2), "The final certification must be made by a 'diplomatic official of the United States or [a] diplomatic or consular official of the foreign country assigned or accredited to the United States.'"); *United States v. Leal*, 509 F.2d 122, 126 (9th Cir. 1975) (same); *United States v. Pacheco-Lovio*, 463 F.2d 232, 233 (9th Cir. 1972) (under Rule 44(a)(2), foreign official record is to be accompanied by final certification "by any of several officials with the United States Department of State in the foreign country").

[66] *Jordan-Meier*, 792 S.W.2d at 191 (document is authenticated under Texas Rule 902(3) if, among other things, it is accompanied by a final certification that "is made by a diplomatic or consular official").

legalization of foreign public documents,"[67] and an international convention was developed as an alternative to this requirement with a streamlined method of authentication.[68] The State does not claim to meet the requirements of the applicable international convention.[69]

Rule 902(3) does allow for a chain of certifications that culminate in a final certification by a diplomatic or consular official. The Advisory Committee Notes to Federal Rule 44 describe this process:

> Under this method, it is sufficient if the original attestation purports to have been issued by an authorized person and is accompanied by a certificate of another foreign official whose certificate may in turn be followed by that of a foreign official of higher rank. The process continues until a foreign official is reached as to whom the United States foreign service official (or diplomatic or consular officer of the foreign country assigned or accredited to the United States) has adequate information upon

---

[67] *See* HAGUE CONVENTION ABOLISHING THE REQUIREMENT OF LEGALISATION FOR FOREIGN PUBLIC DOCUMENTS, precatory clause (October 5, 1961) ("legalisation" from original changed to "legalization").

[68] *See id. See also United States v. Regner*, 677 F.2d 754, 760 n.3 (9th Cir. 1982) (suggesting that "compliance with Rule 902(3) will shortly no longer be necessary because the United States has recently ratified by treaty the Convention Abolishing the Requirement of Legalization for Foreign Public Documents").

[69] Texas Rule 902(3) allows the final certification to be dispensed with "whenever both the United States and the foreign country in which the official record is located are parties to a treaty or convention that abolishes or displaces such requirement, in which case the record and the attestation shall be certified by the means provided in the treaty or convention." Caselaw indicates that the United States is a party to the Hague Convention referred to above. *See Regner*, 677 F.2d at 760 n.3; *United States v. Nunez-Beltran*, 83 Fed. R. Evid. Serv. (Callaghan) 225, 2010 U.S. Dist. LEXIS 76029, *9 (S.D. Cal. July 26, 2010). The Hague Convention provides for certification by means of an "apostille." HAGUE CONVENTION, Arts. 3, 4. The apostille must be explicitly titled as such, using the French word "apostille." *Id.*, Art. 4; *Nunez-Beltran*, 2010 U.S. Dist. LEXIS at *9. This document bears a serial number linked to a central archive in the issuing state for verification purposes. *Nunez-Beltran*, 2010 U.S. Dist. LEXIS at *9. An apostille must be attached to the document to certify in accordance with the convention, *see Construction Drilling v. Crofts*, 63 F. Supp. 2d 509, 515 (D.N.J. 1999) and *Nunez-Beltran*, 2010 U.S. Dist. LEXIS at *9-11, unless otherwise exempted, *see* HAGUE CONVENTION, Art. 3. No apostille was attached to State's Exhibits 13, 14, and 15.

which to base a "final certification."[70]

### 4. *No Final Certification in this Case*

What is evident from this discussion is that State's Exhibits 13, 14, and 15 all lacked a final certification. None of these exhibits were accompanied by a certification by *a diplomatic or consular official* as required by Rule 902(3).

### E. Good Cause

Rule 902(3) provides two situations in which a final certification may be dispensed with.[71] The first, colloquially known as the "good cause exception," provides as follows:

> If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.[72]

This portion of the rule actually contains two requirements: (1) that the parties have been given a reasonable opportunity to investigate the authenticity and accuracy of the documents, and (2) that good cause has been shown to treat the document as presumptively authentic without final certification. The State has chosen not to contest the court of appeals's authenticity holding with respect to State's Exhibit 14 because there is some indication that appellant may not have been given adequate notice of the document. We agree with the State that the record is sufficient to support a conclusion that appellant was given sufficient opportunity to investigate the authenticity of State's Exhibits 13 and 15. So we must now address whether good cause has been shown with respect to

---

[70] R. 44 Advisory Comm. Notes (subdivision (a)(2)).

[71] We have already discussed the second situation in footnote 69.

[72] TEX. R. EVID. 902(3).

those two exhibits.

How do we measure good cause? Is it good cause to believe the document is authentic despite the absence of a final certification, or is it good cause for failing to obtain a final certification? The First Court of Appeals and the Second Circuit have indicated that the former may be true. With respect to the "good cause" inquiry, the First Court of Appeals focused on the evidence tending to show that the documents were authentic:

> The third page of the exhibit is a letter from the central register, stating that their entry shows the person was convicted of sexual abuse of children and fraud. The sixth page states that the person convicted, Klaus Dieter Jordan, is married to a woman named Carmen Hernandez and resides in Guatemala City. The information on the documents is consistent with the evidence. For example, appellant stated on the record that his name is Claus Jordan-Maier, and his wife's name is Carmen. She also testified at trial. They lived in Guatemala for 9-10 years. The State also produced an identification expert who compared appellant's fingerprints with those in the German records, and said that they were the same. We hold that the State established good cause.[73]

The Second Circuit found that the party objecting to the documents at issue in its case had nine years to challenge their authenticity.[74] The court concluded that the party's delay was a sufficient basis for finding good cause to treat the documents as presumptively authentic.[75]

The weight of authority, however, indicates that "good cause" must be good cause for failing to obtain a final certification. The Federal Advisory Committee explicitly took this position:

> Although the amended rule will generally facilitate proof of foreign official records, it is recognized that in some situations it may be difficult or even impossible to satisfy the basic requirements of the rule. There may be no United States consul in a particular foreign country; the foreign officials may not cooperate; peculiarities may

---

[73] *Jordan-Maier*, 792 S.W.2d at 192.

[74] *Raphaely Int'l v. Waterman Steamship Corp.*, 972 F.2d 498, 502 (2ᵈ Cir. 1992).

[75] *Id.*

exist or arise hereafter in the law or practice of a foreign country. Therefore the final sentence of subdivision (a)(2) provides the court with discretion to admit an attested copy of a record without a final certification, or an attested summary of a record with or without a final certification. *This relaxation should be permitted only when it is shown that the party has been unable to satisfy the basic requirements of the amended rule despite his reasonable efforts.*[76]

Other federal courts have also taken the position that good cause requires a showing that the party proffering the evidence was unable to satisfy the rule's requirements despite reasonable efforts.[77] Some of these courts have acknowledged that a finding of good cause may more readily be made when the opposing party has cast no serious doubt as to authenticity after having a fair chance to examine the document, but the proffering party must still suggest some circumstance approximating the situations envisioned by the Advisory Committee.[78]

The State has given no reason for failing to obtain a final certification and has not suggested that it made any attempt to contact an appropriate diplomatic or consular official about authenticating the documents in State's Exhibits 13 and 15. In fact, the record supports the inference that the State failed to attempt to contact the appropriate official because the prosecutors misunderstood the final-certification requirement. But the State's ignorance of Rule 902(3)'s requirements is not a legitimate excuse.

## F.  DISPOSITION

---

[76] R. 44 Advisory Comm. Notes (subdivision (a)(2)) (citations omitted, emphasis added).

[77] *Starski*, 682 F.3d at 54; *United States v. De Jongh*, 937 F.2d 1, 4-5 (1st Cir. 1991) (relying upon Advisory Comm. Notes to Rule 44 and italicizing passage we italicized above); *Leal*, 509 F.2d at 126; *Francis v. Caribbean Transport*, 882 F. Supp. 2d 275, 281 (D. Puerto Rico 2012); *United States v. Yousef*, 175 F.R.D. 192, 193-94 (S.D.N.Y. 1997) (recognizing that there is "a dearth of case law" on the issue of good cause but finding the Advisory Committee Notes to be insightful).

[78] *De Jongh*, 937 F.2d at 4-5; *Francis*, 882 F. Supp. 2d at 280-81.

We affirm the judgment of the court of appeals.

Delivered: April 30, 2014
Publish