

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00158-CR

———————————————

ANDRE DONOVAN PRESCOTT, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 57,786-A

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

At around 10 p.m. on May 15, 2016, Wichita Falls Police Officer Michael Simmons was dispatched in his marked patrol vehicle on a domestic dispute call that was based on neighbors' reports of hearing gunshots and things breaking in an apartment. When he arrived at the scene,[1] Officer Simmons turned on the microphone on his uniform, approached the apartment, and heard the sounds of a disturbance—including what sounded like screaming—inside the apartment. He announced himself as a police officer and then kicked in the front door.

When Officer Simmons entered the apartment, he saw Appellant Andre Donovan Prescott holding onto a woman. Officer Simmons unsuccessfully attempted to detain Prescott by deploying his Taser from four or five feet away. Prescott ran through the kitchen and jumped head-first through a closed window in the bedroom, shattering the glass. Officer Simmons, opting not to follow Prescott through the window, exited the apartment, and the police pursued Prescott until he was taken into custody.

Prescott was indicted and tried for the offense of evading arrest or detention with a prior conviction for that offense, a state jail felony for which a jury found him guilty and sentenced him to 24 months' confinement. *See* Tex. Penal Code Ann.

---

[1]Officer Simmons testified that he was wearing his uniform, a badge, and a duty belt that held his handcuffs, firearm, Taser, pepper spray, and baton.

§ 12.35 (providing that state jail punishment range is confinement from 180 days to two years and up to a $10,000 fine), § 38.04(a), (b)(1) (providing that evading arrest is a state jail felony if the actor has been previously convicted of evading arrest).[2] Prescott raises two issues in this appeal. We affirm as modified.

## II. Discussion

In his two issues, Prescott argues that the trial court abused its discretion by admitting one of his statements into evidence over his rule 410(b)(4) objection, and he challenges some of the $439 in court costs assessed by the trial court in the judgment.

### A. Rule 410(b)(4)

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83.

Rule of evidence 410(b)(4) provides that in a criminal case, evidence of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty or nolo contendere plea or they resulted in

---

[2]Prescott's former court-appointed appellate counsel filed a motion to withdraw as counsel and a brief in support of that motion. *See Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967). On September 13, 2018, we abated this case for appointment of new counsel after completing our independent review of the record and identifying a potentially arguable error. *See id.*

3

a later-withdrawn guilty or nolo contendere plea" is not admissible.[3] Tex. R. Evid. 410(b). Our state rule of evidence 410(b) parallels the language in Federal Rule of Evidence 410(a). *Compare* Tex. R. Evid. 410(b), *with* Fed. R. Evid. 410(a). "When a Texas rule of evidence is patterned on a federal counterpart, we find it appropriate to look to federal cases and commentary for guidance." *Bruton v. State*, 428 S.W.3d 865, 873 (Tex. Crim. App. 2014). Accordingly, we look to the federal court's interpretation of rule 410. *See id.*

The Fifth Circuit has observed that statements made by a defendant other than in the course of plea negotiations do not come under the ambit of rule 410 and has held that to determine whether a discussion should be characterized as a "plea negotiation," the trial court should carefully consider the totality of the circumstances and apply a two-tiered analysis. *United States v. Robertson*, 582 F.2d 1356, 1365–66 (5th Cir. 1978). First, the court must determine whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion. *Id.* at 1366. The initial inquiry into the accused's subjective state of mind must be made with care to distinguish between those discussions in which he was merely making an admission and those in which he was seeking to negotiate a plea agreement, i.e., seeking a government concession. *Id.* at 1367, 1369. And then the court must determine

---

[3]There is an exception, not applicable here, for the admissibility of such a statement when another statement made during the same plea or plea discussions has been introduced and in fairness the statements ought to be considered together. Tex. R. Evid. 410(c).

whether the accused's subjective expectation was reasonable given the totality of the objective circumstances. *Id.* at 1366; *see also Monreal v. State*, 947 S.W.2d 559, 567 n.4 (Tex. Crim. App. 1997) (Baird, J., concurring and dissenting) (citing *Robertson*, 582 F.2d at 1366).

The trial court held a hearing outside the jury's presence with regard to Prescott's statements at issue, which the State offered through its investigator Zane Combes.

> [Prosecutor]: Essentially while the defense counsel was out of the room, the Defendant asked to speak with me. I said that would be fine as long as, you know, his defense counsel was okay with that. So I went out and talked to [defense counsel]. [Defense counsel], the Defendant, and myself and Mr. Combes all went across the hall to the lawyer's lounge.
>
> As soon as we all sat down, [defense counsel] informed the Defendant that anything he said could be used against him. After that basically he just was asking me if I, you know, thought I had enough evidence in this case and just kind of general questions about that. Eventually at one point *he ended up stating that he heard the officer announce police outside the door, and that afterward the police officer came through the door and without saying stop or get down or anything like that, that he tased him or attempted to shoot his taser at him.* I believe that goes to the Defendant's knowledge that it was a police officer who entered into the home and was attempting to detain him, and for that purpose, I intend to call Mr. Combes to testify. [Emphasis added.]
>
> . . . .
>
> [Defense counsel] . . . I believe it's a bit of a mischaracterization as to exact[ly] how the conversation went. We were talking about the discovery that he received and he hears on the tape that I -- I heard on the tape the -- the -- the police officer yell police. And so, you know, I would say that it's a mischaracterization of what happened. I would also say it's probably more of a plea bargain negotiation[] trying to convince the prosecutor not to proceed with charges in this case, he wanted to try

to do that personally. So it was an attempt to get the prosecutor to drop the charges as part of the plea bargain negotiation as a last ditch effort on his behalf to try to get the case dropped . . . .

THE COURT: Anything else, [Prosecutor]?

[Prosecutor]: I'll just note that there was no discussion of plea bargain negotiations. The Defendant said he wanted to talk and that his attorney, first thing he said to him was that this can be used against you. And as far as the mischaracterization, [defense counsel] can cross-examine Mr. Combes about that, and it will be up to the jury to determine what it actually was.

The trial court stated that it would permit Combes's testimony.

Combes testified that prior to jury selection, Prescott asked if he could speak with the prosecutor outside the presence of defense counsel. The prosecutor responded that he would not be comfortable talking with Prescott outside of defense counsel's presence, so Combes, the prosecutor, Prescott, and Prescott's defense counsel went into the lawyer's lounge, and as soon as they sat down, the first thing Prescott's defense counsel said to Prescott was that anything he said could be used against him in court. Combes described the ensuing conversation as follows:

We sat down and kind of gave the floor to Mr. Prescott, and he asked [the prosecutor] if he thought he had enough evidence for the case. [The prosecutor] simply said, yes, he did. From there they talked a little bit back and forth. I can't remember the specific conversation. When [the prosecutor] said, well, I'm not gonna give you my case, you asked if I thought I had enough evidence, and I told you I did, and Mr. Prescott brought up the door being kicked in. [The prosecutor] said that, you know, it was announced police, and *Mr. Prescott said, yes, I heard them say police, then he kicked my door in, and then just tased me. He didn't tell me to get on the ground, he didn't tell me to stop, he just tased me.* [Emphasis added.]

6

On cross-examination, Combes denied that anything had been said about a video and what Prescott might have heard on it.

In his first issue, Prescott complains that his statement regarding whether he heard the officer announce "police" was made in the course of plea negotiations and so should have been excluded under rule of evidence 410(b)(4) and that because he did not testify at trial, the exception in rule of evidence 410(c) did not apply. The State responds that the trial court did not abuse its discretion by overruling Prescott's rule 410(b)(4) objection because Prescott had no subjective expectation that his statement was protected as part of plea-bargain negotiations and the conversation in which he made the statement may not be objectively characterized as a plea-bargain discussion.

The record does not reflect that the parties were undergoing plea discussions when Prescott made his statement. To the contrary, the record reflects that on November 15, 2016, the State made a plea offer of 12 months' confinement in state jail and that around six months later, on March 14, 2017, jury selection began. The next day, Combes was the last witness to testify in the case. Additionally, Prescott was warned by his attorney before the conversation with the prosecutor that anything he said could be used against him. Based on the record before us and the test set out by the federal court, we cannot say that the trial court abused its discretion by admitting Combes's testimony over Prescott's rule 410(b)(4) objection. The trial court could have reasonably determined based on the hearing outside the jury's

7

presence and from Combes's testimony that Prescott had no subjective expectation that his statement was protected as part of plea-bargain negotiations. And the trial court likewise could have reasonably concluded that the evidence did not objectively show a plea-bargain discussion when Prescott did not offer to plead guilty in exchange for anything during his conversation with the prosecutor. Accordingly, we overrule Prescott's first issue.

## B. Costs in the Judgment and Bill of Costs

The trial court signed the judgment of conviction on April 28, 2017, assessing $439 in court costs in the judgment.

On August 13, 2018, we ordered the record to be supplemented with an itemized bill of costs. The bill of costs bears a statement that an "additional collection fee of 25% of the amount of any fine, court costs, and restitution that is ordered to be paid and is more than 60 days past due will also be accessed [sic]" and that an "additional time payment fee of $25 will be assessed if any part of the fine, court costs, or restitution is paid on or after the 31st day after the date the judgment assessing the fine, court costs or restitution is entered." The district clerk certified that "the foregoing is a correct account of the court costs, fees and/or fines adjudged against the defendant in the above entitled and numbered cause, up to this date, AUGUST 21, 2018."

The bill of costs in the first supplemental clerk's record reflects the following:

8

The total cost assessed in this case for court costs, fees and/or fines:

| Fine, Fees & Court Costs | ASSESSED | BALANCE |
| --- | --- | --- |
| CLK FEE | $40.00 | $40.00 |
| STFEE | $80.00 | $80.00 |
| FAF | $5.00 | $5.00 |
| CVCA | $45.00 | $45.00 |
| RECMGMT | $22.50 | $22.50 |
| JCPT | $2.00 | $2.00 |
| JCD | $0.50 | $0.50 |
| CMIT | $0.50 | $0.50 |
| JFF | $4.00 | $4.00 |
| DCR | $2.50 | $2.50 |
| JSF2 | $5.40 | $5.40 |
| JSF1 | $0.60 | $0.60 |
| INDIGENT DEFENSE | $2.00 | $2.00 |
| CHSEC | $5.00 | $5.00 |
| TECHNOLOGY FUND | $4.00 | $4.00 |
| CRIMINAL E-FILING FUND | $5.00 | $5.00 |
| TIME PAYMENT | $25.00 | $25.00 |
| SHER | $110.00 | $110.00 |
| JURY FEE | $40.00 | $40.00 |
| SUMMONS FELONY FEE | $5.00 | $5.00 |
| SHERIFF | $35.00 | $35.00 |
| | $439.00 | $439.00 |

Because the abbreviations were not a model of clarity, we asked the clerk to spell out the abbreviations, and on August 30, 2018, we received the following:

The total cost assessed in this case for court costs, fees and/or fines:

| Fine, Fees & Court Costs | ASSESSED | BALANCE |
| --- | --- | --- |
| CLK FEE  CLERK'S FEE | $40.00 | $40.00 |
| STFEE   STATE FEES | $80.00 | $80.00 |
| FAF FUGITIVE APPERHENSION FUND | $5.00 | $5.00 |
| CVCA COMPENSATION VICTIM CRIME FUND | $45.00 | $45.00 |
| RECMGMT  RECORD MANAGEMENT FUND | $22.50 | $22.50 |
| JCPT  JUDICIAL COURT PERSONEL TRAINING | $2.00 | $2.00 |
| JCD JUVENILE CRIME | $0.50 | $0.50 |
| CMIT CORRECTIONAL MANAGEMENT INST. | $0.50 | $0.50 |
| JFF JUDICIAL SUPPORT FEE | $4.00 | $4.00 |
| DCR  DISTRICT CLERK RECORDS | $2.50 | $2.50 |
| JSF2  JURY FEE | $5.40 | $5.40 |
| JSF1  JURY FEE | $0.60 | $0.60 |
| INDIGENT DEFENSE | $2.00 | $2.00 |
| CHSEC COURTHOUSE SECURITY | $5.00 | $5.00 |
| TECHNOLOGY FUND | $4.00 | $4.00 |
| CRIMINAL E-FILING FUND | $5.00 | $5.00 |
| TIME PAYMENT | $25.00 | $25.00 |
| SHER | $110.00 | $110.00 |
| JURY FEE | $40.00 | $40.00 |
| SUMMONS FELONY FEE | $5.00 | $5.00 |
| SHERIFF | $35.00 | $35.00 |
| | $439.00 | $439.00 |

The August 30, 2018 bill of costs contained the same additional collection information about 25% for a 60-day-past-due bill and $25 for a 31-day-past-due bill

and the same certification that the foregoing was "a correct account of the court costs, fees and/or fines adjudged against the defendant in the above entitled and numbered cause, up to this date, AUGUST 30, 2018."

In his second issue, Prescott states that it appears that the court costs were assessed incorrectly in that "[i]nstead of assessing the consolidated costs of $133.00 under § 133.102(a)(1), [Wichita County] has assessed several fees that add up to the $133 total and appear to have no other possible statutory bases other than § 133.102(a)(1)," i.e., State fees (STFEE, $80), Fugitive Apprehension Fund (FAF, $5), Compensation Victim Crime Fund (CVCA, $45), Judicial Court Personnel Training (JCPT, $2), Juvenile Crime (JDC, $0.50), and Correctional Management Inst. (CMIT, $0.50). He asks us to retitle the $133 amount as "consolidated court costs" with the correct list of costs provided under section 133.102(e).[4] He also points out that the $5.00 Fugitive Apprehension Fund (FAF) fee has no valid statutory basis

---

[4]Section 133.102 lists the following accounts and funds set to receive a percentage of the $133 consolidated fee for a felony conviction: (1) crime stoppers assistance (0.2581%), (2) breath alcohol testing (0.5507%), (3) Bill Blackwood Law Enforcement Management Institute (2.1683%), (4) law enforcement officers standards and education (5.0034%), (5) law enforcement and custodial officer supplemental retirement fund (11.1426%), (6) criminal justice planning (12.5537%), (7) an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A&M University (1.2090%), (8) compensation to victims of crime fund (37.6338%), (9) emergency radio infrastructure account (5.5094%), (10) judicial and court personnel training fund (4.8362%), (11) an account in the state treasury to be used for the establishment and operation of the Correctional Management Institute of Texas Criminal Justice Center Account (1.2090%), and (12) fair defense account (17.8448%). Tex. Loc. Gov't Code Ann. § 133.102.

10

when the local government code was amended in 2011 to eliminate that fee within the consolidated $133 felony fee and that the clerk confused the Judicial Support Fee and two jury fees (JSF1 and JSF2), requiring correction. *See Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (requiring that only statutorily authorized court costs be assessed against a criminal defendant (citing Tex. Code Crim. Proc. Ann. art. 103.002)). And he argues that 90% of the time payment fee ($22.50 of the $25 amount) is facially unconstitutional because it does not reimburse the county or State for any expense incurred in connection with his criminal trial and because it is allocated to the general revenue fund and not designated for any legitimate criminal justice purpose.

The State agrees that some of the costs assessed by the trial court are mischaracterized, set forth incorrect amounts, or are not justified on the facts of the case, including the $25 time payment fee. The State asks us to modify the bill of costs to delete reference to the six itemized costs identified by Prescott—including the $5 FAF fee—and to replace them with the correct costs that comprise the $133 consolidated court costs under local government code section 133.102.[5] Accordingly, we sustain this portion of Prescott's second issue in part, delete reference in the bill of costs to the six itemized costs, and replace them with the standard $133 consolidated

---

[5]Prescott states, "[I]t appears that the title of the fee should be changed to 'consolidated court costs'" and that certain costs for which section 133.102(e) provides a valid statutory basis should be added for accuracy.

court costs permitted under local government code section 133.102. *See* Tex. Loc. Gov't Code Ann. § 133.102.

Prescott points out that under local government code section 133.105(a), a $6 Judicial Support Fee may be assessed, while under code of criminal procedure article 102.0045, a $4 jury reimbursement fee may be assessed but that the bill of costs instead reflects a $4 Judicial Support Fee and $6 for the jury reimbursement fee. He asks us to modify the bill of costs to reflect the correct fee amounts. The State acknowledges that Prescott is correct and asks us to modify the bill of costs so that it reflects the correct fee imposition. Accordingly, we sustain this portion of Prescott's second issue and modify the bill of costs to reflect the correct imposition of fees: $6 for the Judicial Support Fee and $4 for the jury reimbursement fee.

Finally, Prescott complains that the $25 time payment fee is facially unconstitutional. The State replies that the trial court erred by imposing that cost because the record does not support its imposition. Specifically, the State points out that while local government code section 133.103 requires a convicted person to pay a $25 fee if he "pays any part of a fine, court costs, or restitution on or *after* the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution," the trial court assessed the $25 cost as part of the $439 total amount of costs *in the judgment*, before the condition triggering the assessment of the cost—late

payment—could have occurred.[6]  [Emphasis added.]  The State suggests that we delete the $25 fee without reaching Prescott's constitutionality argument.

Because we may not determine the constitutionality of a statute unless that determination is absolutely necessary to decide the case, *see Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015), we sustain in part the remainder of Prescott's second issue, delete the $25 time payment fee as unsupported at the time the costs were entered in the judgment, and accordingly do not reach Prescott's constitutionality argument.  *See id.*; *see also* Tex. R. App. P. 47.1.

### III.  Conclusion

Having sustained part of Prescott's second issue, we modify the bill of costs as follows:  (1) we replace the $133 listed in the bill of costs[7] with the correct $133 consolidated court costs under local government code section 133.102; (2) we substitute the correct amounts of $6 for the Judicial Support Fee and $4 for the jury

---

[6]The State further argues that the record does not show whether Prescott has timely paid any of the other costs assessed by the trial court.  Based on the August 21 and August 30, 2018 bills of costs, and notwithstanding the clerk's certifications on both instruments, we agree.  Both bills of cost mention additional late fees and when they will be assessed, but both show the $439 amount assessed on April 28, 2017, and reflect a balance of that same amount as of August 21 and 30, 2018, respectively. Accordingly, and in light of the inaccuracies in the bills of costs in the record, we cannot retroactively approve the $25 time payment fee.

[7]This is the $133 set out in the bill of costs totaled from "State fees (STFEE, $80), Fugitive Apprehension Fund (FAF, $5), Compensation Victim Crime Fund (CVCA, $45), Judicial Court Personnel Training (JCPT, $2), Juvenile Crime (JDC, $0.50), and Correctional Management Inst. (CMIT, $0.50)."

reimbursement fee; and (3) we delete the unsupported $25 time payment fee, resulting in $414 in court costs.  Having overruled Prescott's first issue and having not reached the remainder of his second issue on the constitutionality of the time payment fee, we affirm the trial court's judgment as modified.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 27, 2019

14